No. 105,401

STATE OF KANSAS, *Appellee*, v. JORGE ALBERTO PRADO, *Appellant*.

(329 P.3d 473)

Opinion filed July 18, 2014.

*Adam D. Stolte*, of Kansas Appellate Defender Office, argued the cause, and *Matthew J. Edge*, of the same office, was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: Jorge Alberto Prado appeals the district court's denial of his motion to withdraw his plea and vacate the sentences imposed pursuant to the plea. Prado argues the district court erred by failing to inquire regarding an alleged conflict of interest between Prado and his counsel and by failing to appoint conflict-free counsel to represent Prado at the motion to withdraw plea and sentencing hearing.

Under the unique circumstances of this case, we conclude Prado and his counsel alerted the trial court to a potential conflict between them, and the district court erred by failing to further inquire into the nature of that conflict. Additionally, we hold Prado was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution because he was not provided conflict-free counsel to assist him in arguing his motion to withdraw his plea. Therefore, we reverse the district court's denial of Prado's motion to withdraw his plea, vacate Prado's sentence, and remand to the district court to conduct a hearing on Prado's motion to withdraw his plea and to appoint new, conflict-free counsel to represent Prado at that hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2009, Prado's wife informed police that Prado had inappropriately touched the couple's 12-year-old daughter. During interviews with police, Prado admitted he inappropriately touched his daughter during the summer of 2009. The State charged Prado under K.S.A. 21-3504 with one count of aggravated indecent liberties with a child under 14 years old. If convicted of that single count, Prado faced a presumptive life sentence with a mandatory minimum term of 25 years (hard 25 life sentence) under K.S.A. 21-4643(a)(1)(C) and lifetime postrelease supervision.

Despite this straightforward charge and potential sentence, Prado and the State entered into a convoluted plea agreement whereby the State agreed to file an amended complaint charging Prado under K.S.A. 21-3502(a)(2) with two counts of rape of a child under 14 by an adult over the age 18 and to dismiss the single aggravated indecent liberties charge in exchange for Prado's no contest plea to the two rape counts. Under Jessica's Law, each rape count carried a presumptive hard 25 life sentence. See K.S.A. 21-4643(a)(1)(B). Thus, the agreement required Prado to plead no contest to two crimes carrying a potentially far more severe total sentence than the sentence for the single crime with which he was originally charged.

The complicated impetus for Prado's agreement to plead to two more severe crimes with a potentially far more severe total sen-

tence was the State's agreement to recommend that the district court depart from the presumptive hard 25 life sentence for each rape count and instead impose two consecutive on-grid terms of 147 months' imprisonment.

However, any benefit from this agreement could occur only if the district court (1) followed the State's departure recommendations, (2) imposed the low grid-box number for each rape conviction, and (3) ran the terms consecutively. If each of these uncertain conditions occurred, Prado would be sentenced to a certain 24½ years instead of the minimum hard 25 and potential life sentence he faced under the original complaint.

At the plea hearing, the State filed an amended complaint against Prado, dismissing the single aggravated indecent liberties charge and adding two rape counts. The district court conducted a plea colloquy during which Prado spoke through an interpreter and indicated he understood the charges in the amended complaint and the terms of the plea agreement and was satisfied with his attorney. Notably, however, neither the convoluted nature of the plea agreement nor the ultimate benefit of the plea was discussed or apparent at the plea hearing. After finding Prado's plea to be both voluntary and informed, the district court accepted Prado's no contest plea to both rape charges.

At the sentencing hearing 3 months later, Prado again spoke through an interpreter and expressed dissatisfaction with his counsel and confusion about the plea agreement:

"THE COURT: All right. Thank you. Mr. Prado, this case was set down this afternoon to proceed with sentencing. I understand, though, there's a matter you wish to address to the Court at this time. If that's so, what is your matter?

"THE DEFENDANT (through Interpreter): Yes.

"THE COURT: What is your matter, sir?

"THE DEFENDANT (through Interpreter): My attorney has not explained things properly to me. This doesn't coincide with the charges I was made [sic].

"THE COURT: Why don't you explain yourself a little more.

"THE DEFENDANT (through Interpreter): This charge has been dismissed, and this is a different situation. This is the other one. It's not the same.

"THE COURT: There is an Amended Complaint that has been filed in this case. You entered pleas of no contest to both these charges. Each of these charges allege that you committed a rape of a child under 14 years of age.

"THE DEFENDANT (through Interpreter): Not true.

"THE COURT: Well, that's the charge.

"THE DEFENDANT (through Interpreter): It doesn't say 'abuse'; it says 'touching.' "

Prado's counsel then interjected and attempted to explain Prado's concerns, acknowledging that Prado's complaint concerned his own representation.

"[DEFENSE COUNSEL]: Judge, if I can interject briefly, I think the best way to summarize what Mr. Prado is attempting to say is that it's his position that I did not explain to him the nature of the charges, essentially that I didn't communicate to him what it was that he was pleading to, and based on that, he is asking the Court to allow him to withdraw his plea. I think that's what he is attempting to say.

"THE COURT: Mr. Prado, be that as it may, this Court explained to you what the charges were and explained to you the consequences, and to those charges you then entered the pleas of no contest which means you did not wish to present a defense.

"So, yes, those charges were explained to you by the Court.

"THE DEFENDANT (through Interpreter): Why didn't they tell me about this eight months before? They just gave it to me the day of the deal, the day of the plea.

"THE COURT: I'm not following.

"THE DEFENDANT (through Interpreter): This was my charge.

"THE INTERPRETER: He is making reference, Your Honor, he is looking at the original Complaint. He is looking at what appears to be the original Complaint, and he's making reference to the word 'touch' instead of 'rape.'

"THE COURT: There is an Amended Complaint that has been filed. It was filed on the 27th of August.

"THE DEFENDANT (through Interpreter): How can they dismiss touching and they are going to add rape?

"And furthermore there is medical reports that indicate that they never found anything in reference to me.

"There was further mention of a letter that my attorney told me about. I haven't seen it. I want to see that letter. I want to see the digital fingerprints of the person that sent that letter. There is people who want to destroy me."

The State responded to Prado's concerns by noting the plea agreement, if followed, provided Prado with an opportunity to receive a definitive 25-year sentence instead of the presumptive hard 25 life sentence he would receive if convicted of the initial aggravated indecent liberties charge. The State argued that because Prado agreed to the amended charges and acknowledged the State

possessed evidence to prove them, Prado had not shown either good cause or manifest injustice to warrant withdrawal of his plea.

The exchange between the district court and Prado continued, with the court attempting to explain that the primary benefit to Prado's plea to two rape charges rather than a single aggravated indecent liberties charge was "the possibility of a shorter sentence." Prado expressed confusion as to how he could receive a shorter sentence for two more serious charges. Ultimately, the court asked Prado whether he wanted to proceed with sentencing, and Prado replied, "No. There should be some evidence here instead of just having a report saying that I raped somebody. There should be some proof."

Finally, Prado's counsel attempted to articulate, and then rebut, his client's concerns:

"[DEFENSE COUNSEL]: Judge, here's my problem. It's in the Complaint. As best I can understand Mr. Prado, he is trying to articulate that he did not understand what was going on. We've had extensive discussions. I didn't file a motion to withdraw based on conflict because I didn't see a conflict. The problem is, it appears to me, although maybe he hasn't articulated it very clearly, he is at least implicating that he has not been counseled, didn't understand what occurred regarding the plea.

"THE COURT: However, that is contrary to what you told the Court at the plea hearing. I accepted the plea after explaining everything to you in detail and after you told me you were fully satisfied with [Defense Counsel] and entered into this plea voluntarily and knowingly.

"Now you tell me you just didn't know anything. I find that hard to believe.

"THE DEFENDANT (through Interpreter): I also don't believe this.

"THE COURT: I'm not finding good cause to allow you to withdraw the plea, so the plea is going to stand."

Having found no good cause to allow withdrawal of Prado's plea, the district court proceeded to sentencing. Prado's counsel requested the court grant Prado the downward departure contemplated by the plea agreement, and the State joined in the request. The district court inquired of Prado whether he wished to comment, and Prado's response demonstrated continuing confusion regarding the State's amendment of one count of "touching" to two rape charges. Consistent with the plea agreement, the district

court sentenced Prado to two consecutive 147-month prison sentences, lifetime parole, and sex offender registration.

Prado appeals the denial of his motion to withdraw his plea and the sentence imposed. We have jurisdiction over Prado's appeal pursuant to K.S.A. 22-3601 (off-grid rape, docketed prior to July 1, 2011).

## ANALYSIS

Prado argues the district court violated his Sixth Amendment right to effective assistance of counsel by deciding Prado's motion to withdraw his plea and then sentencing him while he was represented by conflicted counsel. More specifically, Prado contends that because his oral motion to withdraw his plea demonstrated a conflict of interest between him and his counsel, the district court erred by failing to further inquire into the nature of the conflict and by failing to appoint conflict-free counsel for the motion to withdraw plea and sentencing hearing. We agree.

*Prado was denied his Sixth Amendment right to conflict-free counsel.*

The Sixth Amendment right to counsel includes the right to conflict-free counsel and extends to postconviction proceedings in which the State is represented by counsel. *State v. Taylor*, 266 Kan. 967, 975, 975 P.2d 1196 (1999). Here, because the State was represented at the motion to withdraw plea hearing, Prado had a constitutional right to conflict-free counsel at the hearing on his motion to withdraw his plea. See *State v. Hulett*, 293 Kan. 312, 319, 263 P.3d 153 (2011).

*The district court abused its discretion by failing to inquire into the nature of the conflict.*

The district court is charged with safeguarding a defendant's Sixth Amendment right to counsel. *State v. Vann*, 280 Kan. 782, 789, 127 P.3d 307 (2006). So when a district court " 'becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the court has a duty to inquire further.' " 280 Kan. at 789 (quoting *Taylor*, 266 Kan. at 979). The district court's failure to inquire after becoming aware of a potential

attorney-client conflict is an abuse of discretion. 280 Kan. at 789; see *State v. Sharkey*, 299 Kan. 87, 98-99, 322 P.3d 325 (2014).

Preliminarily, the State argues Prado's failure to request substitute counsel below prevents him from raising this issue for the first time on appeal. But the State misinterprets Prado's argument. Prado does not assert a substitute counsel claim; rather, he asserts his counsel was conflicted and the district court erred by failing to inquire into the nature of the conflict. Moreover, we have never required a defendant to explicitly request new counsel to initiate the district court's duty to inquire. Instead, we look to whether the district court knew or should have known of a potential conflict. See *State v. Galaviz*, 296 Kan. 168, 185, 291 P.3d 62 (2012).

Relying on *State v. Williams*, 290 Kan. 1050, 236 P.3d 512 (2010), the State further argues the district court did not have a duty to inquire because Prado complained about the nature of the plea, not his attorney's performance. In *Williams*, the defendant initially complained in a letter about her attorney's performance; but at the hearing on the motion to withdraw her plea, she made no mention of her attorney's services, instead asserting there was no evidence to support the charge and complaining that she had given up her right to appeal. Because the defendant's complaints at the motion to withdraw plea hearing concerned the nature of her plea rather than her attorney's performance, we concluded the complaints did not trigger the district court's duty to inquire. 290 Kan. at 1056.

The State's comparison of this case to *Williams* is inapt. Here, when the district court asked Prado about the nature of his concerns, he specifically responded through his interpreter, "My attorney has not explained things properly to me." While Prado did not fully describe the basis for his dissatisfaction with his counsel's performance, Prado's counsel clarified any confusion regarding that basis when he informed the court, "[I]t's [Prado's] position that I did not explain to him the nature of the charges, essentially that I didn't communicate to him what it was that he was pleading to." Prado's and his counsel's explanations demonstrate that the primary basis for Prado's motion to withdraw his plea was his dis-

satisfaction with his counsel's performance during plea negotiations, not the nature of the plea.

When a defendant asserts alleged deficiencies in counsel's performance during plea negotiations as the basis for a motion to withdraw plea, a district court must inquire further into the alleged conflict. See *Taylor*, 266 Kan. at 974-75; see also *Sharkey*, 299 Kan. at 97 (discussing *State v. Toney*, 39 Kan. App. 2d 1036, 1044, 187 P.3d 138 [2008], and agreeing with panel's conclusion that defendant triggered district court's duty to further inquire when defendant moved to withdraw plea based on apparent conflict of interest that " 'necessarily undermined any possibility that Toney's motion would be successful' ").

In *Taylor*, the defendant sought to withdraw his plea before sentencing and requested a continuance in order to secure new counsel. At the sentencing hearing, the district court denied Taylor's request for a continuance and his motion to withdraw his plea before permitting him to address the court. Taylor complained at length about his representation, chiefly suggesting he agreed to the plea because his defense counsel "was unwilling or unprepared to try his case on the day of trial." 266 Kan. at 973. According to Taylor, the night before trial his counsel advised against taking a plea because she would win his case, but the next morning she advised him to take the plea.

We recognized that Taylor's statements "placed [defense counsel] in a difficult position" and may have generated a conflict between Taylor and his counsel. 266 Kan. at 973. Namely, Taylor's counsel could not contradict her client's statement and simultaneously continue to represent Taylor's best interests. 266 Kan. at 973-74. Ultimately, we concluded the district court erred by failing to inquire into the alleged conflict of interest because "without the assistance of conflict-free counsel, [defendant] was given no meaningful opportunity to show 'good cause.' " 266 Kan. at 977.

Here, as in *Taylor*, the district court should have been aware that Prado potentially was forced to argue his motion without conflict-free counsel. Prado specifically informed the court, "My attorney has not explained things properly to me. This doesn't coincide with the charges I was made [*sic*]." Prado's counsel

acknowledged Prado's complaint regarding his services, saying, "[I]t's [Prado's] position that I did not explain to him the nature of the charges, essentially that I didn't communicate to him what it was that he was pleading to." Prado's counsel further noted, "[I]t appears to me, although maybe he hasn't articulated it very clearly, he is at least implicating that he has not been counseled, didn't understand what occurred regarding the plea." Both Prado's and his counsel's statements placed the district court on notice of the nature of the potential conflict and triggered the court's duty to further inquire.

Moreover, even if Prado's and his counsel's statements failed to alert the district court to the potential conflict, Prado's attorney put the court on notice of that potential when he explicitly advocated against Prado's interest. After explaining the basis for Prado's motion to withdraw his plea, Prado's attorney noted, "We've had extensive discussions. I didn't file a motion to withdraw [from representing Prado] based on conflict because I didn't see a conflict." Essentially, Prado's attorney argued against the merits of Prado's motion to withdraw his plea.

Once alerted to the conflict of interest, the district court was required to inquire as to the nature of the conflict. But, as the State concedes, the district court failed to do so. While the district court provided Prado an opportunity to address the court, we have held that "simply allowing a defendant to make a statement regarding his or her complaints is an insufficient inquiry." See *Sharkey*, 299 Kan. at 99; *State v. Stovall*, 298 Kan. 362, Syl. ¶ 6, 312 P.3d 1271 (2013). Further, once alerted to the conflict, the district court immediately considered whether good cause existed for Prado to withdraw his plea—*i.e.*, whether Prado actually understood the plea agreement—rather than inquiring into the nature of the conflict.

By skipping this critical step, the district court abused its discretion in denying Prado the opportunity to have conflict-free counsel argue Prado had good cause to withdraw his plea. See *Taylor*, 266 Kan. at 977. Here, in addition to the colloquy between Prado, the court, and Prado's counsel establishing the nature of the conflict, additional circumstances warrant this conclusion: (1) Prado's ob-

vious confusion during the motion to withdraw plea hearing; (2) the highly unusual plea agreement whereby the State amended a single charge of aggravated indecent liberties of a child to two counts of rape to provide Prado with the "possibility" of a lesser sentence, while at the same time providing the possibility of much greater consecutive life sentences; and (3) the absence of any evidence that Prado understood the complicated procedural complexities required to understand the potentially favorable or unfavorable nature of his plea. Under these circumstances, the district court abused its discretion in failing to inquire into the nature of Prado's counsel's conflict of interest.

*Prado is entitled to a new hearing on his motion to withdraw his plea, with representation of conflict-free counsel.*

Ordinarily, when a district court abuses its discretion by failing to further inquire about an alleged conflict of interest, "the appropriate remedy, in the absence of a suitable record on appeal concerning the alleged conflict of interest, is to remand to the trial court for a determination of whether the defendant can 'establish that the conflict of interest adversely affected his counsel's performance.' " *Vann*, 280 Kan. at 792 (quoting *State v. Gleason*, 277 Kan. 624, 653-54, 88 P.3d 218 [2004]).

Here, the record is sufficiently developed for us to conclude that an actual conflict of interest existed. Prado's counsel attempted to explain the basis for Prado's motion to withdraw his plea; but counsel advocated against Prado's position, indicating he had extensive discussions with Prado and did not see a conflict. Because the record demonstrates an actual conflict, that conflict necessarily adversely affected Prado's counsel's performance and prejudice is presumed. See *Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 (2002) (holding " 'actual conflict' " for Sixth Amendment purposes is necessarily conflict of interest adversely affecting counsel's performance); *Sharkey*, 299 Kan. at 101 (presuming prejudice when defendant was "constructively denied his right to counsel because of his attorney's conflict of interests").

Accordingly, we reverse the district court's denial of Prado's motion to withdraw his plea, vacate Prado's sentence, and remand to the district court to appoint conflict-free counsel to represent Prado at a new hearing on his motion to withdraw his plea.

\* \* \*

BILES, J., dissenting: I dissent from the majority opinion because the district court acted reasonably in resolving any potential conflict of interest that might have arisen from Prado's statement that his attorney had not properly explained the plea agreement. Moreover, the record does not affirmatively disclose a Sixth Amendment violation as the majority concludes.

The district court discharged its duty to inquire when it asked Prado to elaborate on his claim that his attorney had not explained things properly to him and Prado did not raise an ineffective assistance of counsel issue in response. No further inquiry into the potential conflict was necessary because Prado's concerns implicated the nature of his plea—not a defect in any advice he relied upon when deciding whether to enter his plea. In concluding the district court failed to inquire into the conflict, the majority misconstrues the State's position; makes an overbroad reading of this court's recent decision in *State v. Sharkey*, 299 Kan. 87, 322 P.3d 325 (2014); and glosses over the district court's detailed colloquy with Prado at the plea hearing, which plays an important contextual role in the analysis of what the district court did at the sentencing hearing when Prado sought to withdraw his plea.

First, I do not accept the majority's depiction of the State's brief as conceding that the district court judge failed to inquire into a supposed conflict of interest with counsel. The State's brief expressly argues the district court acted reasonably "in failing to *further* inquire whether Prado's appointed counsel had a conflict of interest." (Emphasis added.) Obviously, the State recognizes that when the district court asked the defendant to "explain yourself a little more," the district court was making an inquiry. I read the State's position to be that Prado's responses steered the discussion from there, and I agree with that characterization.

I also do not accept the majority's conclusion, based on *Sharkey*, that the district court failed to adequately inquire by simply allowing Prado to make a statement regarding his complaint. In *Sharkey*, the defendant had filed two posttrial, pro se motions seeking a new trial and appointment of new counsel based on his lawyer's alleged failure to adequately investigate and prepare for the case, failure to present a defense and rebut the State's evidence, failure to keep him informed of developments in the case, and "hoodwinking" him into acquiescing to the lawyer's failure to call certain witnesses—including the defendant. The district court addressed the motions simply by asking the defendant if he wished to address the court and, when the defendant declined, denied the motions. 299 Kan. at 90-91. At Prado's sentencing hearing, the district court did not merely give Prado an opportunity to speak after learning of Prado's complaint; it specifically asked Prado to explain the complaint.

Finally, what happened next, when viewed in light of the preceding plea and plea colloquy, demonstrates the district court acted reasonably in allowing the sentencing to continue without appointing new counsel for Prado. A review of what happened before that sentencing hearing is helpful.

On August 27, 2010, Prado executed a one-page written plea agreement. The majority overstates its complexity. Prado agreed to plead no contest to two counts of rape of a child under 14 by an adult over age 18. See K.S.A. 21-3502(a)(2). In exchange, the State agreed to recommend downward departure from the statutory offgrid sentence to consecutive prison terms as set out in the low box of the Kansas nondrug sentencing grid for a severity level I felony. In marginalizing the benefit Prado received from the plea, the majority overlooks that, in addition to the certainty of release, the grid sentence affords Prado the opportunity to earn good time credits that could further reduce his prison time. See K.S.A. 21-4706(a); K.S.A. 21-4722.

The same day Prado signed the plea agreement, the district court conducted a plea hearing. At it, the State filed an amended complaint that dismissed the original aggravated indecent liberties count and added the two agreed-to rape counts. Prado did not object. Then, the district court and Prado had a lengthy dialogue

during which the court satisfied itself that Prado: (1) understood the charges in the amended complaint; (2) had read the plea agreement; (3) understood the plea agreement; (4) personally signed the plea agreement; (5) had enough time to discuss his case with defense counsel; (6) was satisfied with defense counsel's representation; and (7) understood he could serve a sentence of life imprisonment on each of the charges because of his plea, despite the State's recommendation. During this dialogue, the district court asked Prado about his attorney's performance:

"THE COURT: Have you had enough time to talk over the issues in your case and this plea agreement with [defense counsel], your attorney?

"DEFENDANT (Through Interpreter): Yes.

"THE COURT: Has he answered all your questions about your case and this Amended Complaint to your satisfaction.

"DEFENDANT: (Through Interpreter): Yes.

"THE COURT: Are you thoroughly satisfied with the way [defense counsel] has represented you in this case?

"DEFENDANT (Through Interpreter): Yes.

Prado pleaded no contest to both rape charges. And then after satisfying itself there was a factual basis for the no contest plea, the district court resumed its dialogue with Prado:

"THE COURT: Mr. Prado, I have your plea agreement to consider at the time of sentencing. You understand the Court does not have to follow the recommendations in the plea agreement? You understand that?

"DEFENDANT (Through Interpreter): Yes.

"THE COURT: Besides the plea agreement, has anybody made you any promises that you're counting on in entering your pleas of no contest?

"DEFENDANT (Through Interpreter): No.

"THE COURT: Has anybody threatened you or coerced you into these pleas?

"DEFENDANT (Through Interpreter): No.

"THE COURT: Are you under the influence of any alcohol or drugs as you stand here now, Mr. Prado?

"DEFENDANT (Through Interpreter): No.

"THE COURT: I'll state for the record, you do not appear to the court to be under any such influence, and further by your answers, I find that you do understand, sir, the nature and the consequences of your pleas.

"Thinking back on everything I have said, if you want to chat with [defense counsel] that's fine, my question is, having considered everything I have said, do you still wish to maintain pleas of no contest to both Counts II and III of this Amended Complaint?

"(Defendant confers with his attorney through interpreter.)

. . . .

"THE COURT: Mr. Prado, considering everything I have said, comments from [defense counsel], do you still wish to plead no contest to both charges Counts II and III of this Amended Complaint?

"DEFENDANT (Through Interpreter): Yes."

The district court accepted the plea as voluntary and informed and found Prado guilty on both rape counts.

Prior to the sentencing hearing, Prado neither sought to withdraw his plea nor requested substitute counsel. See K.S.A. 22-3210(d). The record reflects no previous allegation by Prado that his counsel was incompetent or ineffective.

With this in mind, my reading of the sentencing hearing transcript differs from the majority's portrayal. The majority asserts the manner in which the district court responded to Prado "den[ied] Prado the opportunity to have conflict-free counsel argue Prado had good cause to withdraw his plea." To the contrary, the inquiry clearly was designed to discover whether Prado was claiming a conflict existed.

A conflict of interest (or the lack of one) exists independent of the district court's inquiry, and the lack of an inquiry does not, in itself, work a Sixth Amendment violation. See *Mickens v. Taylor*, 535 U.S. 162, 173-74, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002) (concluding standard for reversal in cases in which district court fails to inquire into known potential conflict is same as in cases in which potential conflict not known because "[t]he trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any other way renders the verdict unreliable."). Had the district court's inquiry revealed Prado was actually asserting his attorney's inadequate performance as a basis to withdraw the plea, a conflict of interest would have prevented the attorney from going forward with representing Prado on the plea withdrawal motion, and appointment of new counsel would have been appropriate. See *United States v. Davis*, 239 F.3d 283, 287 (2d Cir. 2001). But that is not what happened.

When the district court asked Prado to elaborate on his initial comments that his attorney had not explained things properly and that "[t]his doesn't coincide with the charges I was made, [*sic*]" the dialogue that followed focused on Prado's claimed lack of understanding about the nature of the pled-to charges and whether that claim was realistic given the detailed colloquy with Prado at the plea hearing. I read Prado's responses to the district court's inquiry as a claimed misunderstanding of the charges rather than allegations that his attorney had rendered ineffective assistance. He focused entirely on the amended complaint's language and not on any other aspect of the plea agreement or the legal representation he received prior to approving it. This naturally drew the judge's focus to how Prado could claim a misunderstanding of the fact he was charged with two counts of rape under the amended complaint when he previously told the court directly and repeatedly that he fully understood those charges, had read and understood the one-page written plea agreement that he had personally signed, had enough time to discuss his case with his lawyer, and was satisfied with his lawyer's counsel.

I also do not accept the majority's dubious assertion that Prado's attorney "clarified any confusion" regarding the basis for Prado's statements when the attorney said, "[I]t's [Prado's] position that I did not explain to him the nature of the charges . . . ." When read in its entirety, without the benefit of artful editing, the statement did not clarify matters. Rather, it was an expression of the attorney's own confusion:

"[DEFENSE COUNSEL]: Judge, if I can interject briefly, *I think* the best way to summarize what Mr. Prado is attempting to say is that it's his position that I did not explain to him the nature of the charges, essentially that I didn't communicate to him what it was that he was pleading to, and based on that, he is asking the Court to allow him to withdraw his plea. *I think that's what he is attempting to say.*" (Emphasis added.)

Nor do I accept the majority's characterization that Prado's counsel tried to rebut Prado's position when he said he and Prado "had extensive discussions" and that he "didn't file a motion to withdraw [from representing Prado] based on conflict because [he] didn't see a conflict" as advocating against Prado's basis for plea

withdrawal. As I read the transcript, counsel was not arguing that the court should doubt Prado's claimed misunderstanding of the charges based on his "extensive" counseling, nor was he arguing that he had adequately counseled Prado, despite Prado's suggestion to the contrary. Counsel was simply saying he was unaware a potential conflict might arise at the sentencing hearing based on his prior discussions with Prado. I do not read counsel's comments as being self-serving or defending the advice he had given Prado on whether to enter the no contest plea.

The majority is simply wrong to conclude from these circumstances that "the primary basis for Prado's motion to withdraw his plea was his dissatisfaction with his counsel's performance during plea negotiations, not the nature of the plea." This case is not analogous to *State v. Taylor*, 266 Kan. 967, 972, 975 P.2d 1196 (1999), in which the defendant alleged with particularity that his attorney pressured him into entering a guilty plea after the attorney got "cold feet" the morning of trial, destroying his confidence in the attorney's ability to represent him. Nor is it similar to *State v. Vann*, 280 Kan. 782, 127 P.3d 307 (2006), in which the defendant filed multiple pro se motions alleging specific deficiencies in his attorney's performance.

The district court's inquiry here revealed Prado's hesitation to go forward at the sentencing hearing concerned the amended complaint's rape charges as compared to the non-intercourse crime he was initially charged with—not his no contest plea or the counsel he received prior to entering his plea.

I would hold the district court's response to Prado's initial statement was adequate to discharge its duty to inquire into the potential conflict of interest under the Sixth Amendment. And for these same reasons, I also dissent from the majority's holding that the record is sufficient to conclude an actual conflict of interest existed and a new plea withdrawal hearing is required.

But the majority's analysis on this point bears additional criticism when it reasons that "[b]ecause the record demonstrates an actual conflict, that conflict necessarily adversely affected counsel's performance and prejudice is presumed." This collapses the analysis. An "actual conflict of interest" is an active conflict that "actually

affected the adequacy of [the defendant's] representation." *Mickens*, 535 U.S. at 171. Adverse effect is functionally an element of whether a conflict impaired a defendant's Sixth Amendment rights; one cannot conclusively reason from the mere existence of a conflict that the conflict necessarily "adversely affect[ed] counsel's performance." 535 U.S. at 172 n.5; see also *Davis*, 239 F.3d at 287-88 (concluding defendant's statements in support of plea withdrawal that attorney coerced him into entering plea by giving dire assessment of consequences of not taking plea and threatening not to investigate case or file pretrial motions raised conflict of interest, but remanding to determine whether performance of counsel, who stood mute at plea hearing, was adversely affected by conflict). The majority mistakenly presumes Prado's representation was adversely affected under the circumstances of this case.

I would affirm the district court.

ROSEN, J., joins in the foregoing dissenting opinion.