Biles, J.,
concurring in part and dissenting in part:
I concur in the result and agree with most of the majority’s analysis. I believe it lays out the appropriate analytical framework dealing with a trial court’s duty to inquire when a criminal defendant expresses dissatisfaction with court-appointed counsel and clarifies the caselaw, which has been less than clear-cut in my view.
I write separately only because I cannot accept the majority’s perpetuation of a myth created in State v. Prado, 299 Kan. 1251, 329 P.3d 473 (2014), that Prado’s attorney “went beyond facts, expressed a personal opinion about the merits of Prado’s claim, and explicitly advocated against Prado’s interest.” 302 Kan. at 766-67 (quoting Prado, 299 Kan. at 1259).
I explained my disagreement with that characterization at the time. See Prado, 299 Kan. at 1265-66 (Biles, J., dissenting). Normally, that would be enough. But I fear the majority’s continued mischaracterization of what Prado’s attorney said will cause conscientious counsel to scratch their heads in bewilderment given the majority’s warning today that “counsel must carefully provide only a factual recitation and not shift to advocating against the defendant’s position.” 302 Kan. 747, Syl. ¶ 9. Put simply, diligent counsel cannot be blamed for not understanding where the lines are drawn, especially when these situations often arise at the spur of tire moment.
In Prado, this is all that defense counsel said to draw a foul:
“ ‘[DEFENSE COUNSEL]: Judge, here’s my problem. It’s in the Complaint. As best I can understand Mr. Prado, he is trying to articulate that he did not understand what was going on. We’ve had extensive discussions. I didn’t file a motion to withdraw based on conflict because I didn’t see a conflict. The problem *769 is, it appears to me, although maybe he hasn’t articulated it very clearly, he is at least implicating that he has not been counseled, didn’t understand what occurred regarding the plea.’ ” Prado, 299 Kan. at 1255.
To my eyes, this is nothing more than a factual recitation to a court about what had happened previously. Prado’s attorney did not express a contemporaneous opinion about the merits of what was being presented that day for the court’s consideration; he simply explained why he had not moved to withdraw on his own before the hearing.
In Pfannenstiel’s case, the majority brushes aside as insignificant defense counsel’s factual recitations about what she did to contact witnesses, conduct discovery, and share evidence with Pfannenstiel as “merely” reporting her actions, even though they directly contradicted Pfannenstiel’s allegations. 302 Kan. at 756. This alone illustrates inconsistency between today’s opinion and Prado. These factual recitations are akin to Prado’s counsel explaining that he had “ ‘extensive discussions’ ” with Prado. But while such statements are insignificant to today’s majority, they were a basis for the Prado majority’s conclusion that counsel improperly advocated against Prado. See 299 Kan. at 1259.
Later in today’s opinion, the majority says defense counsel approached “the line of advocating against Pfannenstiel’s position” but ultimately concludes it was not crossed while offering an evaluation of her own trial strategy and by claiming Pfannenstiel had misunderstood “some things” she had told him. 302 Kan. 767. But let’s be more precise. When the district court asked defense counsel if she had contacted any of the witnesses at issue, she responded:
“I contacted Keith Jacobs (sic) and Lydell Frye, Judge. Eugene, last name unknown, no one could provide me with his last name. I did attempt to call him at the numbers that others had, and he never returned my calls, and couldn’t leave messages on his cell phone. Those witnesses that I was able to talk to, their testimony—their statements, their recollections, of that evening differed from each other, and they differed from Mr. Pfannenstiel’s. And I have told him that several times. So they were not able to confirm his—his beliefs of what they would be able to. And because their testimony, or their statements, were so in opposition to each other, I did not believe that they would be of any use to us at trial and might undermine his testimony.”
*770 Later, the district court asked if defense counsel had sent a copy of the evidence to the defendant. She replied:
“I believe I did, Judge. It would have been in the earlier portion. I never send all of the statistical. And it’s my practice to read all of my clients the narrative portion of the police reports. What Mr. Pfannenstiel might be referring to is pictures and tapes that were provided to me on a CD. Now, those, I think we had some copies, but I did not show him DVD or CD’s, whatever you want—the pictures. That might be what he’s referring to. But he received copies of tire DNA test, the lab reports from that. Tried to send him everything.”
Later still, die judge asked whether defense counsel had any concluding response after hearing all of die allegations. She responded:
“Well, Judge, obviously I think Mr. Pfannenstiel has misunderstood some tilings I’ve told him, but I think the most important thing here is that we’re at a crucial stage and that is sentencing. Obviously, from all of his concerns, I don’t expect that he’s going to believe that I’m handling sentencing. And he is a border box, Judge. We did discuss everything yesterday about that, and we did send him a letter. But in view of his serious apprehensions about my representation, I believe that perhaps it would be best to get another attorney to look at sentencing and maybe be able to work with him on—on that.”
In tiiose places in these exchanges where the majority perceives defense counsel was dangerously close to its “line,” the majority excuses what happened because (1) witness trial strategy is left to the professional judgment of the attorney; and (2) counsel redeemed herself ultimately by supporting appointment of new counsel. 302 Kan. at 767. But like counsel’s evaluative statements about trial strategy in this case, Prado’s counsel’s statement that he “ ‘didn’t see a conflict’ ” also merely expressed an independent professional judgment about whether he had perceived prior to the hearing any duty to withdraw based on his relationship with his client. Prado, 299 Kan. at 1255; see also Kansas Rules of Professional Conduct 1.16 (2014 Kan. Ct. R. Annot. 583-84) (declining or terminating representation). And as noted above, this statement was far from an averment that no conflict existed at the time of the hearing. Added to that, Prado’s counsel was not actually addressing a motion to appoint new counsel or, for that matter, any motion at all. Rather, the inquiry in Prado commenced after Prado simply *771 blurted out at sentencing, “ ‘My attorney has not explained things properly to me.’ ” 299 Kan. at 1253.
My point in all of this is not to broadly challenge the majority’s opinion today. I agree with it, and it will be rightly cited by appellate courts as the appropriate manner to review these claims. But I also think its methods and rationale apply equally to Prado. The majority does a disservice to the practitioner, who must discern where these lines get drawn, by prolonging the Prado myth.
Rosen, J., joins the foregoing concurring and dissenting opinion.