NOT DESIGNATED FOR PUBLICATION

Nos. 127,579
127,580
127,581

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PHILIP L. WILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; KEITH SCHROEDER, judge. Submitted without oral argument. Opinion filed October 24, 2025. Remanded with directions.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Sierra M. Logan*, assistant district attorney, *Thomas Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., HURST, J., and JACOB PETERSON, District Judge, assigned.

PER CURIAM: Prior to the start of a probation revocation hearing, Philip Williams orally moved to withdraw his plea based on dissatisfaction with his counsel, among other things. The district court summarily denied the motion and revoked his probation. Williams appeals, arguing that the district court violated his right under the Sixth Amendment to the United States Constitution to conflict-free counsel by requiring him to argue his motion to withdraw a plea pro se.

1

In February 2023, Williams agreed to plead guilty to four charges in Reno County: possession of methamphetamine, possession of marijuana, domestic battery, and violating a protection order. In exchange, the State agreed to dismiss two other pending cases in Reno County, and as part of the sentencing recommendation would not oppose placement on probation with community corrections.

Before sentencing occurred, in September 2023, Williams agreed to plead guilty to seven additional charges in three other Reno County cases.

The district court conducted a consolidated sentencing hearing across all four cases in November 2023. The court imposed a controlling sentence of 107 months in prison, including 6 months in county jail, but granted a dispositional departure and placed Williams on probation with community corrections for 12 months.

Two months later, the State moved to revoke Williams' probation. The district court set the matter for an evidentiary hearing. At the beginning of the hearing, Williams' counsel told the court that Williams had a preliminary matter explaining the following:

> "MS. CRANE: Your Honor, I have a preliminary matter, but this is set for evidentiary. Ms. Logan has two witnesses here. My client has something he would like to present before we go forward with the evidentiary hearing.
> "THE COURT: He'd like to present?
> "MS. CRANE: Not me to present to you, Your Honor.
> "THE COURT: So you have a preliminary matter. Go ahead.
> "MS. CRANE: When I got here this afternoon and began speaking with my client and he is very upset, does not understand why all of this is happening. He does not understand why there's a no contact order. He's just not—he says he's not aware of any of that so consequently he would like to withdraw his plea. He's been studying it in the law library and he believes he has grounds to withdraw his plea. I don't know what those are.

I didn't get into that with him because should he be allowed the opportunity to ask to withdraw his plea he would need to have another attorney represent him because I'm sure it would involve something to do with me."

The district court then addressed Williams directly:

"THE COURT: Tell me what the basis is, what the good cause would be for me to withdraw the plea, please.
"THE DEFENDANT: Well, I wasn't able to bring my legal papers with me, but I just don't feel that I was represented right."

Williams then proceeded to explain his efforts to navigate his situation, including that he understood the "PFAs," did not understand why he received a 101-month sentence, lacked access to legal resources, and felt he had to rely on his attorney. Williams stated he believed he was being "railroaded" and could have "did a Senate Bill 123," did not know what he signed, and insisted he would not have agreed to his plea knowingly. He told the court that his attorney told him he "had to plead guilty." The court inquired whether Williams was advised of his rights, to which Williams' counsel told the court that there was not any writing, just the recitation by the court.

Williams confirmed that he had not signed anything and commented that he had only received his criminal history at his hearing. Williams claimed he did not understand it and felt confused and scared.

The district court then launched into an explanation of the statute governing withdrawal of pleas and that a finding of manifest injustice was required. The district court judge then found, sua sponte, that there was no manifest injustice. The judge highlighted that he had carefully explained the plea and sentencing to Williams, confirmed he was not coerced, and noted he raised no confusion or complaints at the time. The court stated that Williams received a favorable "sweetheart deal" despite his

criminal history categorization of A, with a departure to community corrections, and concluded that Williams' current complaints arose only after revocation proceedings began.

The district court concluded by noting that the record supported his decision to summarily deny the oral motion to withdraw a plea. The State was never asked its position on the motion to withdraw the plea. Likewise, the judge never asked Williams' attorney to argue the motion on Williams' behalf. And counsel never presented any argument to the court that it should allow the plea withdrawal. She merely recognized that Williams wanted to make the motion, and she was sure it was because of something she did. She stated she had no idea what the actual grounds were. Because Williams would be challenging her representation, she indicated that Williams "would need to have another attorney represent him."

The colloquy was confined to Williams and the district court related solely to his motion to withdraw his plea. We also note that Williams never claimed he wished to proceed pro se on his motion to withdraw his plea. In fact, he clearly did not think it was going to be argued that day because he told the judge he was not able to bring his legal papers related to the issue with him.

After failing to inquire regarding the conflict, and denying Williams' oral motion to withdraw his plea, the district court then proceeded to an evidentiary hearing on the motion to revoke probation. Williams' counsel stepped in to represent Williams, examining witnesses, and ultimately imploring the court to not revoke his probation. She argued that executing on the sentence would not be the "correct thing to do." She pointed out that he had only been on probation a few weeks and it often takes that long for probationers to figure out how to navigate the requirements. She asked the court to go along with the recommendation of Williams' intensive supervision probation—120-day jail sanction and then go to a sober living house. Instead, the district court found that

4

Williams had violated his probation and that intermediate sanctions were not required because Williams had obtained a dispositional departure to probation. The district court, therefore, revoked Williams' probation and ordered Williams to serve his underlying prison sentence of approximately 8.5 years.

Williams timely appeals.

ANALYSIS

When a defendant articulates dissatisfaction with counsel, a district court has a duty to inquire into a potential conflict. An appellate court reviews a district court's inquiry about a defendant's dissatisfaction with counsel for abuse of discretion. *State v. Valdez*, 316 Kan. 1, 25-26, 512 P.3d 1125 (2022). An abuse of discretion occurs when judicial action is based on an error of law or fact or is unreasonable. 316 Kan. at 25.

When a district court becomes aware of a potential conflict of interest between a defendant and their attorney but fails to conduct an inquiry, it "constitutes an error of law—a failure to follow the law and fulfill a legal duty." *State v. Pfannenstiel*, 302 Kan. 747, 761, 357 P.3d 877 (2015) (citing *State v. Brown*, 300 Kan. 565, 576, 331 P.3d 797 [2014]). Williams argues the district court erred in this way—by failing to conduct an inquiry despite knowing of a potential conflict of interest between Williams and his counsel. We agree.

First, there is no constitutional right to counsel at every postconviction proceeding or motion; however, unless a defendant waives the right to counsel, the defendant should be represented by *conflict-free* counsel whenever the State is represented. *State v. Taylor*, 266 Kan. 967, 974, 975 P.2d 1196 (1999). Here, because the State was represented at the hearing in which Williams made his postsentence motion to withdraw a plea, Williams had a right to counsel.

5

Second, the "state and federal constitutions guarantee a criminal defendant the right to effective assistance of counsel, and a district court's duty to inquire into a potential conflict with counsel derives from this right." *State v. Bacon*, 309 Kan. 1235, 1238, 443 P.3d 1049 (2019). It is the task of the district court to ensure that a defendant's Sixth Amendment right to counsel is honored. *State v. Cromwell*, 253 Kan. 495, 507, 856 P.2d 1299 (1993).

Third, it is a defendant's responsibility to provide "'an articulated statement of attorney dissatisfaction,'" which then triggers a district court's duty to inquire into a potential conflict. *Bacon*, 309 Kan. at 1238.

An appropriate inquiry requires the district court to at least provide the defendant with the opportunity to explain the conflict of interest, irreconcilable disagreement, or inability to communicate with counsel. *Valdez*, 316 Kan. at 25-26. Asking a "'single, open-ended question by the trial court may suffice if it provides the defendant with the opportunity to explain *a conflict of interest*.'" (Emphasis added.) 316 Kan. at 25. Here, although the district court allowed Williams the opportunity to address the court, its one question inquiry concerned Williams' motion to withdraw a plea, not the conflict of interest claim. The district court inquired "what the good cause would be for [it] to *withdraw the plea*[?]" (Emphasis added.) The district court failed to elicit or develop facts about counsel's representation, despite the record showing that such an inquiry was necessary.

Moreover, a defendant is "never required . . . to explicitly request new counsel to initiate the district court's duty to inquire. Instead, [the reviewing court] look[s] to whether the district court *knew or should have known* of a potential conflict." (Emphasis added.) *State v. Prado*, 299 Kan. 1251, 1257, 329 P.3d 473 (2014) (citing *State v. Galaviz*, 296 Kan. 168, 185, 291 P.3d 62 [2012]). In this context, the *Prado* case warrants further review.

Like Williams, Prado stated, "'My attorney has not explained things properly to me.'" 299 Kan. at 1257. This indicated dissatisfaction with counsels' performance during plea negotiations. And similar to Williams' counsel, Prado's counsel acknowledged the complaint, stating, "'[I]t's [Prado's] position that I did not explain to him the nature of the charges,'" and that Prado "'is at least implicating that he has not been counseled, [and] didn't understand what occurred regarding the plea.'" 299 Kan. at 1257, 1259. The *Prado* court noted Prado's confusion, the unusual plea agreement, and the lack of evidence that Prado understood the plea's complexities as factors warranting further inquiry, and observed that the district court then inquired into whether Prado understood the plea agreement rather than inquiring into the conflict itself. The *Prado* court also explained, even if these statements did not alert the district court, when Prado's counsel explicitly advocated against Prado's interest, it also put the district court on notice. 299 Kan. at 1258-59. The Kansas Supreme Court held that both Prado's and his counsel's statements should have alerted the district court to the potential conflict, triggering a duty to inquire further. 299 Kan. at 1259.

Here, the record indicates there were three times during the hearing at which the district court knew, or should have known, that there was a potential conflict and it had a duty to inquire further: (1) Counsel's statement explicitly suggesting a potential conflict; (2) Williams' statements, including that he was not "represented right" and his attorney "said I had to plead guilty," and, (3) when the district court realized that even though it had not removed counsel, counsel failed to advocate for Williams regarding his pro se oral motion to withdraw his plea. As a result, Williams was forced into the position of presenting his motion pro se.

The court had a constitutional duty to inquire further. Instead, when the district court was alerted to the conflict, it immediately considered whether manifest injustice existed for Williams to withdraw his plea rather than inquiring into the nature of the conflict. The court addressed the merits of the motion to withdraw a plea directly to

7

Williams, stating, "Tell me what the basis is, what the good cause would be for me to withdraw the plea, please." When Williams did address the court, his statements provided further indication that there was a potential conflict.

Williams explained that given his lack of access to a legal library that he had "to take the word of my attorney to think that what I'm being represented for is true." Williams described his own legal research and generally asserted that he was being "railroaded." Williams essentially criticized his counsel's representation, by insisting that treatment should have been recommended and that there was no way he would have signed his plea agreement. The only question the court asked the parties regarded Williams' advisory of rights. Williams' counsel explained that the court did a recitation of Williams' rights but because it was not reduced to writing, Williams did not sign anything. Williams affirmed that he did not sign anything and stated he did not even receive his presentencing investigation report in a timely manner. Finally, Williams concluded by stating he was confused and scared, and that he did not understand some of the proceedings in his case.

While the district court provided Williams with an opportunity to argue his plea withdrawal, that is not enough. *State v. Stovall*, 298 Kan. 362, Syl. ¶ 6, 312 P.3d 1271 (2013) (allowing an opportunity to argue *pro se* motions is no substitute for conflict-free counsel); *cf. State v. Sharkey*, 299 Kan. 87, 99, 322 P.3d 325 (2014) (a district court must specifically inquire about a conflict, even when the defendant generally declines to address the court). The district court skipped over an essential requirement when it failed to investigate Williams' expressed dissatisfaction with counsel. Thus, the district court abused its discretion.

So we turn next to the remedy for the abuse of discretion by the district court.

When a district court fails to inquire into the alleged conflict of interest, it follows that "'without the assistance of conflict-free counsel, [defendant] was given no meaningful opportunity to show "good cause,"'" or in Williams' case, to show manifest injustice. *Prado*, 299 Kan. at 1258. Here, Williams was denied the opportunity to have conflict-free counsel argue his motion to withdraw his plea. Thus, the question remains whether Williams was denied a meaningful hearing on his motion to withdraw his plea. The court in *Galaviz* ordered a remand to the district court with directions to appoint new counsel and either conduct the probation revocation proceeding with conflict-free counsel or conduct a hearing regarding the nature of the conflict of interest and whether that conflict requires a reversal of the probation revocation. 296 Kan. at 194.

Because we agree that Williams was denied an opportunity to fully present his claim that he had a conflict of interest with his attorney, we remand this case for a hearing to determine whether there was an actual conflict of interest. If the court determines there is a conflict, it must appoint conflict free counsel to represent Williams in his motion to withdraw his plea and, if needed, in his motion to revoke his probation. Even if it is determined that there is no justifiable conflict with his attorney, Williams is entitled to a new hearing with counsel fully engaged in his representation related to his motion to withdraw his plea—a motion he was previously required to argue pro se.

Remanded with directions.