NOT DESIGNATED FOR PUBLICATION

Nos. 128,458
128,459

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTIAN ROSALES-CHAVEZ,
*Appellant.*

MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and ATCHESON, JJ.

PER CURIAM: After a consolidated disposition and sentencing hearing involving a probation violation case (22CR475) and a felony criminal case (24CR271), Christian Rosales-Chavez appeals the district court's denial of his request for new counsel. He claims the district court abused its discretion by its inquiry into his dissatisfaction with appointed counsel. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In February 2023, Rosales-Chavez pleaded guilty in 22CR475 to possession of cocaine with intent to distribute. After plea negotiations, the State agreed to dismiss charges of five other crimes. These charges included single felony counts of interference with law enforcement, aggravated endangering a child, possession of drug paraphernalia, and misdemeanor possession of marijuana and drug paraphernalia. The State also agreed to jointly recommend a dispositional departure.

At a sentencing in May 2023, the district court granted the parties' joint request for a departure and sentenced Rosales-Chavez to 36 months of probation and a suspended term of 72 months' imprisonment. In assessing the 72-month term, the district court sentenced Rosales-Chavez to the aggravated sentence within the corresponding Kansas Sentencing Guidelines Act grid block. The court explained that it did this as an "additional incentive" for Rosales-Chavez to successfully complete his probation.

But that proved challenging. Rosales-Chavez failed to report to a random urine analysis (UA), used cocaine, and failed a UA. For those violations of his probation terms and conditions, Rosales-Chavez served three two-day jail sanctions.

In June 2024, the State moved to revoke Rosales-Chavez' probation for more violations. As alleged in the supporting affidavit by his probation officer, Rosales-Chavez failed to provide a UA, entered a club, failed to complete community service, and failed to observe curfew. The State filed an amended affidavit later the same month, alleging Rosales-Chavez had tested positive for THC. Rosales-Chavez denied use, but additional testing confirmed the positive results. So Rosales-Chavez' probation officer documented Rosales-Chavez' false denial. Rosales-Chavez later admitted to smoking marijuana again on June 22.

2

The district court then issued a warrant for Rosales-Chavez' arrest. But when law enforcement tried to execute the warrant, Rosales-Chavez ran from the officers. This resulted in a new criminal charge—24CR271—felony interference with law enforcement. The State filed a corresponding motion to revoke Rosales-Chavez' probation in 22CR475.

Rosales-Chavez posted a $5,000 appearance bond for the probation violation and agreed to appear in court. As a condition of his bond, he agreed not to possess or consume any controlled substance, as was a condition of his probation.

The district court appointed Louis Podrebarac to represent Rosales-Chavez, who had previously been represented by retained counsel. After plea negotiations with the State, Rosales-Chavez pleaded guilty in 24CR271 and admitted to violating his probation in 22CR475. In exchange for his plea, the State agreed to recommend that Rosales-Chavez be placed on probation in 24CR271 and that his probation in 22CR475 be extended after two consecutive 60-day sanctions. The agreement contained a severance clause which relieved the State of its obligations if Rosales-Chavez violated his bond.

The district court continued the disposition in Rosales-Chavez' probation case until after his sentencing hearing in 24CR271. But before that sentencing hearing, Rosales-Chavez violated his bond and probation by failing to report and testing positive for cocaine.

When the sentencing hearing arrived, the State announced its intent not to follow the plea agreement, citing the severance clause and Rosales-Chavez' violation of his bond, but the parties had worked out a new recommendation. The agreement in 22CR475 was to jointly recommend revocation and the imposition of a modified 36 months in prison. In 24CR271, the parties agreed to recommend a consecutive 4-month sentence for the interference conviction, for a controlling sentence of 40-months' imprisonment.

Podrebarac advised the district court that Rosales-Chavez wanted to hire new counsel to represent him but that Rosales-Chavez intended to accept the modified sentence as recommended. Still, Podrebarac asked the district court to ask Rosales-Chavez about his dissatisfaction and whether he wanted to hire new counsel.

The district court asked Rosales-Chavez if he intended to retain new counsel. Rosales-Chavez replied that he wanted a new attorney but could not afford to hire one. The district court responded, "Well, you put everyone in a hard spot here." The district court then asked Rosales-Chavez if he still wanted to proceed with the sentencing and whether he understood the State's offer. Rosales-Chavez started to discuss jail was not "working" for him and how he had "never been to treatment." The district court redirected him to simply answer whether or not he wanted to proceed with the sentencing, and Rosales-Chavez responded, "No."

The district court then began to end the hearing, stating, "I don't feel comfortable going forward today. And, so, I'm going to let Mr. Podrebarac withdraw and we're going to appoint a different attorney." Yet the prosecutor asked for clarification whether Rosales-Chavez was dissatisfied with Podrebarac's representation or simply did not want to go to prison. In response, Rosales-Chavez suggested some dissatisfaction with Podrebarac but expressed curiosity about a potentially better plea deal:

> "So, I don't know. I just feel like we haven't talked. He hasn't really came and talked to me . . . . I mean, . . . if I go to prison, I go to prison. I'm ready for it, you know. But, I just feel like I could probably—we could probably work . . . something else out."

The district court suggested to Rosales-Chavez that his decision to end the proceeding could carry negative consequences in terms of future plea bargaining: "I can tell you that not going forward today will probably hurt you as far as some of your time." And the prosecutor agreed.

4

After these comments, Rosales-Chavez started to change his mind. Podrebarac reentered the conversation, so the district court asked him whether he was still comfortable talking to Rosales-Chavez. Podrebarac talked some about his efforts in this case and the plea agreement. He ended with the following before deferring to Rosales-Chavez on how he wanted to proceed: "You know, as I've told him, I think this is the best plea I can get for him. He seems to think somebody else can get him a better deal. Maybe they can."

The district court asked Rosales-Chavez whether he believed there had been a breakdown in the attorney-client relationship that would make him uncomfortable to move forward with Podrebarac. But Rosales-Chavez replied that there had not been a breakdown and agreed to consult with Podrebarac. Before temporarily adjourning, the district court expressed its willingness to appoint a new attorney for Rosales-Chavez:

> "I'm not forcing you to do it. I'm willing to appoint you a new attorney. I want that to be clear. And, not because I've seen anything wrong with Mr. Podrebarac. I want you to be assured that you're being adequately represented. And, so, that's why I'm doing this, okay."

After a break, the parties returned to the courtroom. Podrebarac announced that they were ready to proceed, and the district court confirmed with Rosales-Chavez that he was sure he wanted to go forward with the sentencing.

The district court's inquiry ended, and the hearing resumed. The State asked the district court to adopt the parties' new recommendation and sentence Rosales-Chavez to a controlling 40 months in prison. Podrebarac asked the district court to waive fees but made no other sentencing recommendations.

The district court, however, declined to follow the terms of the parties' agreement. It revoked Rosales-Chavez' probation and ordered him to serve a modified 60-month prison sentence in 22CR475 and a consecutive 12-month sentence in 24CR271. The district court thus imposed a controlling sentence of 72 months' imprisonment.

Rosales-Chavez timely appeals. We consolidated his cases for review.

DID THE DISTRICT COURT APPROPRIATELY INQUIRE INTO ROSALES-CHAVEZ' ATTORNEY DISSATISFACTION OR COERCE A WITHDRAWAL?

Rosales-Chavez challenges the district court's handling of the potential conflict of interest he raised and his request for new counsel. He argues that the district court failed to adequately address his motion for new counsel and coerced him into withdrawing that motion.

*Standard of Review and Basic Legal Principles*

A district court has a duty to inquire into the protection of a defendant's Sixth Amendment right to counsel under the United States Constitution if it becomes aware of a possible conflict between appointed counsel and a felony defendant. *State v. Prado*, 299 Kan. 1251, 1256, 329 P.3d 473 (2014); *State v. Sharkey*, 299 Kan. 87, 96, 322 P.3d 325 (2014). Typically, to trigger this duty, a defendant must make "'an articulated statement of attorney dissatisfaction.'" *State v. Pfannenstiel*, 302 Kan. 747, 760, 357 P.3d 877 (2015) (quoting *State v. Brown*, 300 Kan. 565, 575, 331 P.3d 797 [2014]).

To warrant substitute counsel, a defendant must demonstrate "'justifiable dissatisfaction'" with appointed counsel. *State v. Breitenbach*, 313 Kan. 73, 90, 483 P.3d 448 (2021) (quoting *State v. Sappington*, 285 Kan. 158, 166, 169 P.3d 1096 [2007]). Justifiable dissatisfaction includes demonstrating a conflict of interest, an irreconcilable

6

disagreement, or a complete breakdown in communication between the defendant and counsel. A court is justified in refusing to appoint new counsel as long as there is a reasonable basis to believe the attorney-client relationship has not deteriorated so much that appointed counsel can no longer effectively aid in the presentation of a defense. *Breitenbach*, 313 Kan. at 90.

We review the district court's inquiry for abuse of discretion. *Brown*, 300 Kan. at 575-76. The party asserting that the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024). A district court generally abuses its discretion if the decision was: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Brown*, 300 Kan. at 571. As applied here to the duty to inquire, the district court may abuse its discretion in three ways: (1) when the district court becomes aware of a potential conflict of interest but fails to inquire; (2) when the court is aware of a conflict and investigates, but fails to conduct an appropriate inquiry; and (3) when the court conducts an appropriate inquiry, but abuses its discretion in deciding whether to appoint substitute counsel. *State v. McDaniel*, 306 Kan. 595, 606-07, 395 P.3d 429 (2017).

Rosales-Chavez argues only the second type of error here—that the district court did not appropriately inquire about the potential conflict with appointed counsel. He maintains instead that the inquiry "impermissibly coerced" him into withdrawing his request for new counsel.

Podrebarac's announcement to the district court that Rosales-Chavez wanted new counsel gave the court notice of a potential conflict. See *State v. Z.M.*, 319 Kan. 297, 306, 555 P.3d 190 (2024) (finding defendant's request put court on notice of potential conflict). This triggered the district court's duty to inquire. See *Pfannenstiel*, 302 Kan. at 760. The district court asked Rosales-Chavez about the matter, but Rosales-Chavez now challenges the appropriateness of its inquiry.

Rosales-Chavez claims the district court effectively forced him to withdraw his motion for new counsel. Our Supreme Court has held that if a defendant files a pro se motion for new counsel and later seeks to withdraw it, such withdrawal "must be the personal, voluntary, and knowing act of the defendant, *and the record must reflect that circumstance*." (Emphasis added.) *Brown*, 300 Kan. at 577. Rosales-Chavez concedes that the record lacks evidence of any malicious intent from the district judge's statements, and he does not accuse the court of violating his right to due process by dissuading him from exercising his constitutional right to conflict-free counsel.

Still, Rosales-Chavez argues that after he made clear statements showing he did not want to proceed and instead wanted new counsel, the district court gave inappropriate responses that persuaded his later decision. He relies almost entirely on this statement by the district court: "I can tell you that not going forward today will probably hurt you as far as some of your time." He also argues that the district court improperly suggested that he could overserve his sentence if he requested a continuance to appoint new counsel: "Because you're going to prison, you'll get more credit, *et cetera*."

Rosales-Chavez argues that these statements caused him to withdraw his request for new counsel because they convinced him that he would serve a longer sentence if he did not do so. He thus argues that he was precluded from making the "personal, voluntary, and knowing" withdrawal that *Brown* requires. See *Brown*, 300 Kan. at 577. Rosales-Chavez acknowledges that the record does not provide enough evidence to show a conflict of interest that affected his counsel's performance. He thus argues that the appropriate remedy for the alleged error is to remand for an evidentiary hearing with a different judge, with directions to appoint new counsel.

The State contends that Rosales-Chavez had no reason to think that he might get a better plea deal with a new attorney than Podrebarac had already negotiated. Rosales-Chavez was facing 72 months in prison in the first case and a mandatory consecutive

sentence in the second case. But his attorney renegotiated a second global disposition where the parties' controlling recommended sentence was 40 months. The prosecutor confirmed that this renegotiated global plea bargain, which was a 44% reduction from the initial 72-month sentence, was not going to get any better.

Despite Rosales-Chavez' suggestion that the district court's inquiry was insufficient and coercive, we are not convinced that any reversible error has been shown. Rosales-Chavez provides almost no factual or legal support for his argument. And the following rules, which typically apply to this kind of issue, do not support Rosales-Chavez' claim of error:

> "To satisfy its duty to investigate a defendant's complaint, a district court must fully investigate (1) the basis for the defendant's dissatisfaction with counsel and (2) the facts necessary for determining whether that dissatisfaction warrants appointing new counsel. *Valdez*, 316 Kan. at 25. This investigation, however, is not demanding and should not be especially time consuming or burdensome. *In re B.H.*, 64 Kan. App. 2d 480, 494, 550 P.3d 1274 (2024). For example, the district court need not make "'a detailed examination of every nuance'" of a defendant's claim. *State v. Toothman*, 310 Kan. 542, 554, 448 P.3d 1039 (2019). Rather, the district court may ask a "'single, open-ended question'" if it gives the defendant "'the opportunity to explain'" the alleged conflict of interest. *Valdez*, 316 Kan. at 25. "'An inquiry assures any delay is for good cause, thereby avoiding automatically delaying proceedings by discharging the current counsel and appointing new counsel for all motions seeking substitute counsel, regardless of the motion's merits.'" 316 Kan. at 27 (quoting *Pfannenstiel*, 302 Kan. at 764)." *State v. Mack*, No. 125,867, 2025 WL 290005, at *8 (Kan. App.) (unpublished opinion), *rev. denied* 320 Kan. 865 (2025).

The district court gave Rosales-Chavez the opportunity to explain the alleged conflict of interest, permitted him to confer with counsel about it, then let Rosales-Chavez address the court again to explain what he had decided to do. The district court's inquiry into Rosales-Chavez' stated dissatisfaction with counsel was adequate.

9

The record also shows that Rosales-Chavez personally, knowingly, and voluntarily chose to withdraw his motion for new counsel. Rosales-Chavez did not enter the sentencing hearing with a passionate desire for a new attorney. Rather, when the district court initially asked Rosales-Chavez about his alleged conflict of interest, Rosales-Chavez' response was, "I don't know. I just feel like we haven't talked."

The district court obtained clear confirmations from Rosales-Chavez after he spoke with his attorney, showing he acted personally, knowingly, and voluntarily in deciding to proceed with Podrebarac:

> "THE COURT: I'm not forcing you to do it. I'm willing to appoint you a new attorney. I want that to be clear. And, not because I've seen anything wrong with Mr. Podrebarac. I want you to be assured that you're being adequately represented. And, so, that's why I'm doing this, okay. *Does that make sense?*
>
> "[Rosales-Chavez]: Yeah.
>
> . . . .
>
> "THE COURT: Okay. And, the same question for you, [Rosales-Chavez]. We took a break so you guys could talk some more. After talking, do you want to go forward with the sentencing today, as well as going forward with sentencing with Mr. Podrebarac as your attorney; *is that correct*?"
>
> "[Rosales-Chavez]: Yes, sir." (Emphasis added.)

These statements also show that Rosales-Chavez' withdrawal was personal, voluntary, and knowing. We thus find no abuse of discretion.

Affirmed.

10