NOT DESIGNATED FOR PUBLICATION

No. 121,833

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRYAN GRANT-ADAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; KURTIS I. LOY, judge. Opinion filed June 25, 2021. Affirmed in part, reversed in part, sentence vacated, and case remanded with directions.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Michael Gayoso Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and BRUNS, JJ.

BUSER, J.:  Bryan Grant-Adams appeals his conviction and sentencing for violating the Kansas Offender Registration Act (KORA) K.S.A. 22-4901 et seq. He raises three issues on appeal. First, Grant-Adams contends the district court erred when it did not allow his attorney who had a conflict of interest to withdraw and provide replacement counsel at the hearing on the motion to withdraw plea. We are persuaded this issue is meritorious. Second, Grant-Adams argues that our court should vacate his sentence and remand the matter to the district court to reconsider whether to include his 2014 conviction for criminal threat in the calculation of his criminal history score. This claim is also meritorious. Finally, Grant-Adams claims the revised Kansas Sentencing

1

Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq., violates his state and federal constitutional rights to a jury trial because it permits judicial fact-finding of prior convictions. We find no error.

Accordingly, we affirm in part, reverse in part, vacate his sentence, and remand with directions to appoint conflict-free counsel, reconsider the motion to withdraw plea, and resentence the defendant in accordance with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2019, Grant-Adams pled no contest and was found guilty of failing to register under KORA in violation of K.S.A. 2018 Supp. 22-4903(a) and (c)(1)(A). In return for the plea, the State agreed to dismiss other counts of failing to register and one count of perjury in this case, in addition to two other counts of selling methamphetamine in another case.

Shortly thereafter, Grant-Adams' attorney, Jason Wiske, filed a motion entitled "Amended Motion to Withdraw Plea and For Withdrawal of Appointed Counsel." In the two-page motion, Wiske advised that his client had informed him that "he wants to withdraw his plea." No reason was stated. Additionally, Wiske sought to withdraw as counsel because "he may be a factual witness in regard to the withdrawal of the plea and new counsel should be appointed."

At a hearing on the motion, both Grant-Adams and Wiske sought appointment of replacement counsel because Grant-Adams was asserting that Wiske was ineffective for failing to discuss potential defenses and certain aspects of the plea bargain with him and that he was frequently unavailable to discuss the case. For his part, Wiske stated that continuing to represent Grant-Adams would be a conflict of interest because his performance as Grant-Adams attorney was a basis for his client to withdraw the plea. The

2

district court denied Wiske's request to withdraw as counsel and scheduled a hearing on the merits of the plea withdrawal motion for August 20, 2019.

Grant-Adams was the only witness to testify at the hearing. He said there were several grounds for withdrawal of his plea. First, he asserted that Wiske failed to tell him that the State planned to dismiss the drug charges in the other criminal case regardless of Grant-Adams' plea in this case. Second, that Grant-Adams had insufficient time to consider the plea agreement. Third, that communications with Wiske had broken down. Grant-Adams testified that if Wiske had provided him with all the necessary information, he "would have definitely admitted [his] guilt but then asked for probation or [a] downward departure," which he was not allowed to do under the plea agreement.

The district court denied the motion to withdraw plea, ruling that Grant-Adams knowingly and voluntarily entered his plea. At sentencing, the district court determined that Grant-Adams had a C criminal history score. Neither party objected to that ruling. Grant-Adams was sentenced to 36 months in prison. He appeals his conviction and sentence.

## DENIAL OF ATTORNEY WITHDRAWAL AND APPOINTMENT OF CONFLICT-FREE COUNSEL

On appeal, Grant-Adams contends the district court failed to adequately inquire into the nature of the conflict between Grant-Adams and Wiske and failed to appoint conflict-free counsel for the hearing on the motion to withdraw plea. Grant-Adams asserts that these failures resulted in the functional absence of counsel at a critical stage which requires a reversal of the ruling denying the motion. See *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). Alternatively, Grant-Adams claims that reversal is appropriate because Wiske's conflict of interest adversely

3

affected his performance at the hearing. See *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

For its part, the State contends the district court made appropriate inquiries into the conflict of interest issue and that Wiske provided competent, conflict-free counsel to the defendant at the hearing on the motion to withdraw plea. We will address both aspects of the claimed error. A detailed factual recitation is necessary to evaluate this issue.

The district court was first advised of a potential conflict on August 16, 2019, when Wiske informed the court that Grant-Adams wanted to withdraw his plea because he had not understood it and he was unhappy with Wiske's representation. Under these circumstances, Wiske also sought to withdraw as counsel. At the hearing, Wiske informed the district court:

> "But in regards to my motion to withdraw my client has informed me that he does not believe that he understood the plea. I have not got into the specifics about that with him because *I think he's complaining about my representation and there's kind of a conflict of interest in regards to that* so I'm asking the Court for leave to withdraw in this case [and] to appoint new counsel who can then file an appropriate motion to withdraw the plea." (Emphasis added.)

Wiske and Grant-Adams then had a colloquy with the district judge:

> "MR. WISKE: Okay. Your Honor, like I said to the Court before[,] my client informs me that he did not understand the plea or wants to withdraw it.
> "What I may suggest we can do, Your Honor, the Court could interview Mr. Grant-Adams in chambers concerning his reasons for withdraw[al] of the plea without the [S]tate present or I could put him on the stand and he could testify concerning why he believes that he should be able to withdraw his plea and why new counsel should be appointed.

4

"THE COURT:  Don't we really need those reasons to be in writing so that the prosecution has the opportunity to respond[?]

"MR. WISKE:  Your Honor, that puts me in a difficult position. If he's complaining about my performance I'm having to put down in writing what is deficient in my performance. I would much rather have—

"THE COURT:  I understand what you're saying. I'm going to ask him the question right now.

"*Are you asking Mr. Wiske to withdraw?*

"THE DEFENDANT:  *Yes.*

"THE COURT:  *And what is the reason for that?*

"THE DEFENDANT:  *Well, when we spoke about the plea bargain last time, we spoke on the phone, my concerns with it—my main concerns with it were all we ever spoke about was what madam prosecutor wanted to do. We never talked about a defense to my case or my side of this case at all. Just everything that's been brought to me, not just by him, but even previous lawyer. Well, this is what she wants. Well, okay, you know, what kind of defense do we have here? What are we looking at?*

"THE COURT:  *We don't need any more than that.*

"THE DEFENDANT:  Okay.

"THE COURT:  You're talking about events occurred prior to the plea?

"THE DEFENDANT:  And then—

"THE COURT:  Wait, wait. You're talking about events that occurred prior to the plea?

"THE DEFENDANT:  And after, yes.

"THE COURT:  What kind of events occurred after the plea?

"THE DEFENDANT:  Well, I'm just trying to call and speak with him just to ask him about, you know, my thoughts and what's going on with this and throughout this whole thing I can't never get him.

"THE COURT:  Mr. Grant-Adams, how many attorneys have you had on this case?

"THE DEFENDANT:  I believe he's the third.

"THE COURT:  Why is that?

"THE DEFENDANT:  I couldn't tell you. I know the first two times she offered plea bargains I didn't agree with, my attorneys didn't like the [idea] that I wouldn't take them, they withdrew.

5

"THE COURT: Well, I didn't get the impression from your prior attorneys that was the reason at all. As a matter of fact they said other reasons.

"THE DEFENDANT: Like?

"THE COURT: I'm not going to get into it with you. One of them specifically you filed a disciplinary complaint against them.

"THE DEFENDANT: Yes.

"THE COURT: Well, unfortunately we have to have a hearing, an evidentiary hearing. We're going to have an evidentiary hearing regarding the request to get new counsel. We're going to have an evidentiary hearing regarding your motion to withdraw plea." (Emphases added.)

The State objected to the "last minute grandstanding by the defendant." The prosecutor, Reina Probert, opined that Grant-Adams was "just trying to delay the process and I think that he's finding himself, you know, five days from the penitentiary and now wants to withdraw his plea. I think it's as simple as that." In particular, Probert reminded the district court that at the plea hearing Grant-Adams testified that he had sufficient time to discuss the plea agreement with Wiske.

The district judge announced his ruling:

"THE COURT: Here's what we're going to do. On Tuesday, August 20, this is on the Court's calendar. At that time we're going to conduct an evidentiary hearing.

"Mr. Wiske, *at this time I'm not going to allow you to withdraw. I just—Mr. Grant-Adams is becoming a broken record. I don't want to put you in a predicament with the Disciplinary Administrator's Office based on his past conduct* but we're going to have an evidentiary hearing on Tuesday, the 20th, regarding [Grant-Adams'] request to withdraw his plea.

"I'm not going to appoint new counsel for that at this time because it was pursuant to a written plea agreement. You can ask [Grant-Adams] to make the statement on the record why he wants to withdraw his plea.

"The prosecution is correct, request to withdraw plea prior to sentencing requires good cause must be shown pursuant to the case of *State v. Edgar*, and we will proceed based upon that. *I don't think we need different counsel for that.*

"*Mr. Wiske, it does not require your testimony because we have a record where Mr. Grant-Adams testified under oath in answering those* [*plea colloquy*] *questions and we can then proceed that way but we will have an evidentiary hearing at that time.*

"If I allow him to withdraw the plea we'll take different action. If I don't we'll proceed immediately to sentencing." (Emphases added.)

Wiske sought clarification of the district judge's ruling:

"MR. WISKE: Just to make sure I understand the Court's order. If my client testifies about A, B, and C, and the [S]tate attempts to call me as a witness as to what I did or did not do in my representation I would be having to take attorney-client privilege on that so I just want to make sure that I understand what's going on.

"THE COURT: Mr. Grant-Adams has the burden to show at least a prima facie showing that he's met any of the *Edgar* standards before the [S]tate has to go through anything like that.

"*I do not anticipate that I would allow* [*the State*] *to call you as a witness at the evidentiary hearing because it is a written plea. And because the colloquy between the Court and Mr. Grant-Adams was while he was under oath and it was extensive and he was asked the questions if he had adequate time to review and discuss this with you.* (Emphasis added.)

Under the Sixth Amendment to the United State Constitution, Grant-Adams had a "'right to representation that is unimpaired by conflicts of interest or divided loyalties.'" *State v. McDaniel*, 306 Kan. 595, 606, 395 P.3d 429 (2017). When the district court learns of a potential conflict of interest, the court has a duty to inquire regardless of the remedy sought. 306 Kan. at 606. Relevant to this appeal, "[w]hen a defendant asserts alleged deficiencies in counsel's performance during plea negotiations as the basis for a motion to withdraw plea, a district court must inquire further into the alleged conflict." *State v. Prado*, 299 Kan. 1251, 1258, 329 P.3d 473 (2014). Our court reviews the district

7

court's inquiry into potential conflicts of interest for an abuse of discretion. A district court abuses its discretion when it makes a legal or factual error or when no reasonable person would agree with its decision. *McDaniel*, 306 Kan. at 606.

In conflict of interest situations, the Kansas Supreme Court has recognized three errors constituting an abuse of discretion: (1) When the district court learns of a potential conflict of interest but fails to inquire at all, a decision based on an error of law—the error being the district court's failure to fulfill a legal duty; (2) when the court is aware of the conflict, goes on to investigate, but fails to conduct an appropriate inquiry; and (3) when the court, after being aware of the conflict, conducts an appropriate inquiry into the defendant's expression of dissatisfaction with counsel but commits an abuse of discretion in deciding whether to substitute counsel. 306 Kan. at 606-07 (citing *State v. Pfannenstiel*, 302 Kan. 747, 760-62, 357 P.3d 877 [2015]).

Grant-Adams argues that the district court abused its discretion by making the second and third errors—that is, the court failed to adequately inquire about the conflict and the court failed to appoint substitute counsel when it was warranted. We will first consider whether the district court failed to adequately inquire about the potential conflict of interest.

*District Court's Duty to Inquire into the Nature of the Conflict*

"An appropriate inquiry requires fully investigating (1) the basis for the defendant's dissatisfaction with counsel and (2) the facts necessary for determining if that dissatisfaction warrants appointing new counsel, that is, if the dissatisfaction is 'justifiable.'" 302 Kan. at 761. Once Grant-Adams' attorney informed the district court about the potential conflict of interest, and moved to withdraw upon that basis, the district court was required to make a sufficient inquiry into the matter to determine if withdrawal of counsel was necessary.

8

As detailed earlier, during the district court's questioning of Grant-Adams the court learned that the defendant was requesting Wiske's withdrawal. The district court asked Grant-Adams, "And what is the reason for that?" In response, Grant-Adams advised that he and Wiske "never talked about a defense to my case or my side of this case at all." Upon hearing that, the district court interjected, "We don't need any more than that." In response to additional questions, Grant-Adams stated that his communication problems with Wiske occurred before and after the plea. The district court then asked several questions of Grant-Adams regarding the previous attorneys the district court had appointed to represent him, noting that the defendant had filed a disciplinary complaint against one of them. Following argument by the prosecutor, the district court ruled that it would not allow Wiske to withdraw.

We find two significant problems with the district court's inquiry. First, although the district court asked an open-ended question regarding Grant-Adam's dissatisfaction with Wiske, the court then seemingly interrupted the defendant's response to inform him that his answer was sufficient. But Grant-Adams' response to the district court's broad question lacked specificity that should have been developed with clarifying questions from the court. Moreover, given this colloquy, we are not persuaded that Grant-Adams had an opportunity to fully air and explain his grievances about Wiske. As we will discuss later, Grant-Adams had other specific concerns regarding the plea bargain that he testified to during the later evidentiary hearing.

Our Supreme Court has previously emphasized the necessity of allowing the defendant to thoroughly inform the district court about any complaints regarding a conflict of interest with one's attorney. See, e.g., *State v. Bryant*, 285 Kan. 970, 991, 179 P.3d 1122 (2008) (holding that the court satisfied the requirement by asking open-ended questions "to learn everything that was bothering" defendant and "fully hearing" complaints). Here, the district court's truncated inquiry did not permit a full understanding of the basis for Grant-Adams' request that Wiske withdraw as counsel.

9

Second, the district court did not ask any questions of Wiske regarding the possible conflict of interest that he brought to the attention of the court. Wiske initiated the conflict of interest issue by filing a motion to withdraw as attorney. Yet, the district court did not ask Wiske to explain the legal or factual basis for his concern regarding a conflict of interest. Additionally, the district court did not ask Wiske any factual questions regarding Grant-Adam's complaints. See *Pfannenstiel*, 302 Kan. 747, Syl. ¶ 9 ("A district court may ask questions of counsel when inquiring into a potential conflict of interest for the purpose of determining if a defendant has a justifiable dissatisfaction with court-appointed counsel."). Indeed, in one recent case, our Supreme Court remarked that "[i]nquiry by the district court of defense counsel is necessary" to inquire into a potential conflict of interest. *State v. Jarmon*, 308 Kan. 241, 251, 419 P.3d 591 (2018).

In summary, the circumstances surrounding the district court's inquiry are similar to the situation in *State v. Toney*, 39 Kan. App. 2d 1036, 1041, 187 P.3d 138 (2008), wherein our court observed, "[a]lthough the district court asked some questions of [the defendant], these inquiries did not directly address the conflict issue, and no questions were asked of his public defender." In short, we are persuaded that, like *Toney*, the brief and limited inquiry by the district court was insufficient as a matter of law because it failed to fully investigate the grounds for Grant-Adams' dissatisfaction with counsel and did not obtain the facts necessary to determine whether his dissatisfaction was justifiable.

In addition to the district court's error in failing to follow the *Pfannenstiel* protocol for inquiring into a potential conflict of interest, we have additional concerns that the district court improperly considered matters that should not have been considered in analyzing the conflict of interest issue.

First, the district court's comments regarding its reasons why Wiske should not be allowed to withdraw are troubling. Specifically, during the district court's inquiry, it mentioned that Grant-Adams was "becoming a broken record" in requesting new counsel.

10

In fact, most of the district court's inquiry involved a recitation of prior attorneys appointed for Grant-Adams. At the later evidentiary hearing, the district judge stated, "One of my biggest concerns, Mr. Grant-Adams, is Mr. Wiske is your third attorney." Wiske did not object to this line of inquiry.

While we understand the district court's frustration in having to appoint multiple attorneys, each request should be based on the individual merits of the claim and none should be discounted simply because previous requests have been made by the defendant. See *State v. Sharkey*, 299 Kan. 87, 98, 322 P.3d 325 (2014) (Despite defendant's previous complaints about his attorney, "the judge had a duty to explore the new allegations.").

Adherence to the *Pfannenstiel* protocol ensures that a request for withdrawal is based on a review of the individual facts and circumstances that may indicate the presence of a conflict of interest. This protocol does not provide that prior requests for withdrawal of counsel necessarily suggest that the latest request is necessarily lacking in merit. Here, the district court did not adhere to the *Pfannenstiel* protocol. Instead, and without objection by Wiske, the district court erred by implying that it would base its attorney withdrawal decision, in part, on the number of attorneys previously appointed to represent Wiske.

Most concerning are the district court's comments—which Wiske did not object to—that plainly suggested the court was predicating its decision on whether to allow Wiske to withdraw and appoint substitute counsel on reasons having nothing to do with a potential conflict of interest. For example, the district court stated it was not going to appoint new counsel for the evidentiary hearing because Wiske's plea was pursuant to a written plea agreement. Additionally, Wiske was advised that the hearing did not "require [Wiske's] testimony because we have a record where Mr. Grant-Adams testified under oath in answering those [plea colloquy] questions." Finally, after Wiske sought

11

clarification of the procedure the district court intended to follow at the evidentiary hearing, the judge stated:

> "I do not anticipate that I would allow [the State] to call you as a witness at the evidentiary hearing because it is a written plea. And because the colloquy between the Court and Mr. Grant-Adams was while he was under oath and it was extensive and he was asked the questions if he had adequate time to review and discuss this with you."

The district court's comments and procedure were plainly in error, yet Wiske did not object to these remarks and procedures that prejudiced his client. The comments suggest an inclination by the district court to prejudge the motion to withdraw plea simply because a written plea agreement was prepared and the district court had engaged Grant-Adams in a colloquy before accepting the plea. We know of no legal basis for these circumstances to be definitive on the conflict of interest inquiry or the merits of the motion to withdraw plea. Moreover, by precluding Wiske's testimony at the hearing, the district court not only limited the State's ability to produce relevant evidence, it impaired Grant-Adams' ability to require Wiske to testify and potentially establish the ineffectiveness of Wiske's representation—the critical basis for withdrawing Grant-Adams plea.

In summary, the district court's comments and procedure were at variance with the *Pfannenstiel* protocol and indicative of an improper evaluation of the attorney conflict issue. All things considered, we are convinced the district court abused its discretion because it failed to properly inquire into the apparent conflict of interest by Wiske when the crux of the motion was that the plea should be withdrawn due to Wiske's ineffectiveness as counsel. See *Pfannenstiel*, 302 Kan. at 761-62 (listing cases).

The district court's error in not appropriately inquiring into Wiske's potential conflict of interest is not determinative of the issue. Although we could consider a

remand for the district court to make an appropriate inquiry into the attorney conflict issue, the record on appeal is sufficiently developed for us to examine whether, at the time of the hearing on the motion to withdraw plea, an actual conflict of interest existed. See *Prado*, 299 Kan. at 1260 (record on appeal sufficient to establish actual conflict).

*Whether Divided Loyalties Adversely Affected Defense Counsel's Performance*

Under the Sixth Amendment, an actual conflict of interest occurs when a counsel's divided loyalties adversely affect counsel's performance. *Mickens v. Taylor*, 535 U.S. 162, 171-72, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002); *Toney*, 39 Kan. App. 2d at 1042. To prevail on appeal, Grant-Adams must show that an actual conflict of interest affected Wiske's performance with regard to the motion to withdraw plea. Several facts and circumstances which developed during the evidentiary hearing are relevant to the determination of whether divided loyalties adversely affected Wiske's performance as Grant-Adam's attorney.

Four days after the initial hearing, an evidentiary hearing on Grant-Adams' motion to withdraw plea was held. At the beginning of the hearing, the district court informed the parties that it had reviewed two Kansas Supreme Court cases regarding whether Wiske could continue to represent Grant-Adams at the evidentiary hearing. According to the district judge, these cases indicated that it was proper for Wiske to continue to represent Grant-Adams in the plea withdrawal hearing:

> "THE COURT: All right. When we were here last week Mr. Grant-Adams had filed a motion to withdraw plea.
> "A question arose as to whether or not [defense attorney] could do that. I want to point out just for the record that in ruling that we could proceed with an evidentiary hearing today on Mr. Grant-Adams' motion I looked at *State v*[.] *Prado*, P-R-A-D-O, 299 Kan. 1251. And also *State v. Pfannenstiel*, 302 Kan. 747 which discusses the holding in *Prado*.

13

"In doing so, the Kansas Supreme Court said they found a meaningful distinction between an attorney truthfully recounting facts and an attorney going beyond factual statements and advocating against the client's position.

"Factual based evaluative remarks regarding trial strategy normally left to the professional judgment of counsel are appropriate for counsel to make during an inquiry into an alleged attorney-client conflict of interest so that's what the Court relied upon in saying that we could proceed with an evidentiary hearing and I just wanted you to know that before we proceed."

As Grant-Adams correctly notes on appeal, however, *Prado* and *Pfannenstiel* do not support the district court's understanding that the motion to withdraw plea hearing could proceed with conflicted counsel, provided that Wiske only address factual issues and not argue against the motion. *Prado* specifically dealt with the appropriateness of a district court's *inquiry* of counsel into a potential conflict of interest. At that initial stage of the proceedings, defense counsel may make factual statements during the inquiry to allow the district court to ascertain if the alleged conflict is justified to warrant withdrawal and substitution of conflict-free counsel. *Pfannenstiel*, 302 Kan. at 766.

In this case, at the initial hearing, the district court had the opportunity during its inquiry to ask Wiske for facts while the court considered whether there was a conflict of interest. But no such inquiry was ever made. After making a truncated inquiry of Grant-Adams, the district court ruled that Wiske could not withdraw and would represent Grant-Adams during the evidentiary hearing. The district court's mistaken understanding of *Prado* and *Pfannenstiel* resulted in the erroneous legal conclusion that, provided Wiske only stated facts during the evidentiary hearing, there was no need to order his withdrawal as attorney due to a conflict of interest. This is a clear error of law. Of note, Wiske did not object to the district court's mistaken understanding of *Prado* and *Pfannenstiel*.

14

At the evidentiary hearing, Wiske called Grant-Adams as a witness. Following the directive of the district court—which had informed Wiske he could call Grant-Adams as a witness to make a statement on the record—Wiske asked Grant-Adams a few open ended, general questions during his direct and redirect examinations and let Grant-Adams generally explain his complaints.

Grant-Adams testified that he did not have sufficient time to consider the plea bargain prior to the plea hearing. Moreover, unbeknownst to him, the companion criminal case wherein he was charged with two counts of sale of methamphetamine which Wiske told him was a "strong case" was "probably going to be dismissed in the first place" regardless of the plea agreement. Consequently, in Grant-Adams' view, the benefit of the plea agreement to him was substantially less than Wiske had characterized. Finally, Grant-Adams complained that "there was no communication—there was nothing [Wiske] did because [Wiske] didn't do anything. We didn't communicate. We only do something when we're in [the courtroom]. As far as correspondence and communication about this case there was none."

Finally, Grant-Adams explained that at the plea hearing he answered the district court's questions the way he did because

> "I was made aware that they were going to be asked before we came in the courtroom. I asked so how does this go today, what is going to happen, what do I do today. This is what's going to happen, these things are going to be said, these questions are going to be asked, these are the answers you give. I did that."

Wiske did not call any other witnesses or present other evidence at the hearing.

Upon our review of the evidentiary hearing record, we conclude an actual conflict of interest existed at the time of the hearing on Grant-Adams' motion to withdraw plea.

15

First, based on Grant-Adam's testimony, it is apparent his basis for withdrawing the plea involved the content of conversations between him and Wiske regarding the plea agreement and Grant-Adam's claim of insufficient communications about the agreed-upon plea bargain. These matters were peculiarly within the knowledge of Grant-Adams and Wiske. From Grant-Adam's perspective, Wiske's testimony was critical to proving or corroborating Grant-Adam's account of ineffective assistance of counsel. Yet, because the district court did not allow Wiske to withdraw and substitute new counsel and precluded Wiske from testifying at the evidentiary hearing, Grant-Adam's ability to successfully withdraw his plea was greatly impaired. This presented an actual conflict of interest.

Moreover, Wiske had divided loyalties under the circumstances. Our court discussed the problem with divided loyalties in *Toney*. See 39 Kan. App. 2d at 1042. To represent Grant-Adams faithfully and effectively at the hearing, Wiske was obligated to advocate and prove his own professional ineffectiveness. On the other hand, to defend himself against Grant-Adams' claims of ineffectiveness, Wiske could be expected to discount or minimize Grant-Adams' claims.

Did the divided loyalties also result in an actual conflict? We think so. Wiske's failure to object to the district court's several erroneous statements and procedure showed his inability to represent the best interests of his client. As detailed earlier, Wiske did not object to the district court limiting Grant-Adams' response during the initial inquiry into a potential conflict or to the court's suggestion that Grant-Adams' request for Wiske to withdraw was tainted by prior attorney withdrawals. Wiske did not object when the district court suggested that because a written plea agreement was involved and Grant-Adams had provided sworn answers during the plea colloquy, no substitution of conflict-free counsel was necessary. Wiske also did not object when the district court misread *Prado* and *Pfannenstiel* to provide that substitute counsel was not needed at the evidentiary hearing because Wiske could state facts provided he did not argue against Wiske's interests.

16

Lastly, during Wiske's closing argument at the evidentiary hearing, he advised the district court that he had a conflict representing Grant-Adams because his attorney performance was a basis for the motion, but he argued that, based on Grant-Adams' testimony, there was a prima facie showing of good cause for a plea withdrawal and the court should appoint a new attorney to have a "full-out evidentiary hearing." Wiske told the district court:

"I think by his testimony that he said that he did not understand the plea, that he was just answering the questions as counsel instructed him to do, and that counsel failed to communicate with him, I think, provides a prima facie case.

"*We're not here today to necessarily determine whether there is good cause that the plea should be withdrawn. We're just here today to determine if there is enough evidence that the issue of withdrawing the plea should go to a full-out evidentiary hearing with new counsel.*

"*As I think the Court is aware I'm a little bit conflicted in representing Mr. Grant-Adams because he's complaining about my performance so he should be able to have new counsel appointed* and the [S]tate has the opportunity to argue against whatever evidence Mr. Grant-Adams would bring at a full evidentiary hearing which I guess would probably be me being called as a witness, but be that as it may, we're just here on whether we have enough evidence that it should go to that hearing and new counsel should be appointed.

"*I would submit that there is enough evidence, a prima facie case, that Mr. Grant-Adams should be allowed to proceed on his motion to withdraw for new counsel.*" (Emphases added.)

In response, the prosecutor argued, in part, "Your Honor, we just had an evidentiary hearing on [Grant-Adams'] motion to withdraw his plea, we don't need a second one. . . . Last week the Court indicated that when we came back today we would have a hearing on that motion and we just did."

Wiske's closing argument, the State's response, and the district court's ruling make clear that Wiske was mistaken as to the purpose of the evidentiary hearing. At the time of this hearing, the district court had previously ruled that Wiske would not be allowed to withdraw but must proceed to present Grant-Adams' motion to withdraw plea on the merits of the matter at the evidentiary hearing. While Wiske did present minimal questioning and argument in support of Grant-Adams' motion, his misunderstanding of the purpose of the evidentiary hearing suggests he may not have presented other evidence in support of the motion. This is another indication of Wiske's inability under the circumstances to adequately represent Grant-Adams given his actual conflict of interest.

Having concluded that an actual conflict of interest existed which adversely affected Wiske's representation of Grant-Adams in the motion to withdraw proceedings, we presume prejudice. See *Mickens*, 535 U.S. at 173 ("[T]he *Sullivan*[, 446 U.S. at 348-50,] standard . . . presumes prejudice."); *Cuyler*, 446 U.S. at 349-50 ("a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief").

The district court's denial of the motion to withdraw plea is reversed. The case is remanded to the district court with directions to appoint conflict-free counsel and for reconsideration of the motion to withdraw plea.

CALCULATION OF CRIMINAL HISTORY SCORE AT SENTENCING

Grant-Adams contends for the first time on appeal that the district court erred during sentencing by including his 2014 conviction for criminal threat in calculating his criminal history score. He correctly states that a defendant may raise a legal challenge to the classification of a prior conviction for purposes of lowering a criminal history score for the first time on appeal under K.S.A. 2020 Supp. 22-3504(a). See *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015). That provision allows a court to "correct an

illegal sentence at any time while the defendant is serving such sentence." K.S.A. 2020 Supp. 22-3504(a). And a challenge to a criminal history calculation essentially raises a claim that the sentence is illegal because it "does not conform with the applicable statutory provision regarding the term of punishment authorized for the current conviction." *Dickey*, 301 Kan. at 1034.

Grant-Adams claims our court has unlimited review over the district court's classification of prior convictions for criminal history purposes under the KSGA. The Kansas Supreme Court has said, though, that while it has often described classification issues as questions of law, "it is a bit more nuanced because it is the State's burden to prove by a preponderance of the evidence that the defendant committed a crime for which classification is appropriate." *State v. Obregon*, 309 Kan. 1267, 1275, 444 P.3d 331 (2019) (citing K.S.A. 2018 Supp. 21-6814). As a result, our Supreme Court has said, on appeal, the district court's findings must be supported by substantial evidence. *Obregon*, 309 Kan. at 1275. When the record lacks substantial evidence to support a district court's criminal history classification, a remand is necessary to allow the district court to determine the appropriate classification. 309 Kan. at 1275.

Grant-Adams' argument relies on *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019). In *Boettger*, the Kansas Supreme Court held that part of the criminal threat statute, K.S.A. 2018 Supp. 21-5415, was unconstitutional. 310 Kan. at 823. Under that statute, there are two alternative means of committing a criminal threat:  by threatening to commit violence "with intent to place another in fear" or by threatening to commit violence "in reckless disregard of causing such fear." K.S.A. 2018 Supp. 21-5415(a)(1). Our Supreme Court held in *Boettger* that the "reckless disregard" provision of the statute is unconstitutionally overbroad. 310 Kan. at 823. Although *Boettger* was decided after Grant-Adams was sentenced, "in a direct appeal, a defendant will receive the benefit of any change in the law that occurs while the direct appeal is pending." *State v. Murdock*, 309 Kan. 585, 591, 439 P.3d 307 (2019).

Grant-Adams also predicates his argument on K.S.A. 2020 Supp. 21-6810(d)(9) which provides that a prior conviction "that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes."

Grant-Adams contends that substantial evidence does not support including the criminal threat conviction in his criminal history score because the record before the district court did not show which version of the offense he committed. He contends that if his conviction was for a *reckless* criminal threat, then it was erroneous under K.S.A. 2020 Supp. 21-6810(d)(9), for the district court to calculate his criminal history score based, in part, on that conviction because our Supreme Court has determined that particular offense was unconstitutionally overbroad.

The presentence investigation (PSI) report that the district court used to calculate Grant-Adams' criminal history score is the only document in the record establishing the conviction, and it describes the offense as "Criminal Threat" under "21-5415(a)(1)." That provision contains both the "intentional" and "reckless disregard" language, so the PSI does not indicate which version of the offense Grant-Adams committed. As a result, substantial evidence does not support including the criminal threat conviction in Grant-Adams' criminal history score.

An analogous sentencing situation occurred in *Obregon*. For the first time on appeal, the defendant challenged the district court's classification of a prior Florida battery conviction as a person crime. The Florida statute contained two alternative means of committing a battery, only one of which would be scored as a person offense in Kansas. As in Grant-Adams' case, the PSI report was the only item in the record establishing the conviction as part of the defendant's criminal history, and that report did not convey which version of the offense the defendant had committed. Our Supreme Court found that "on this record there is not substantial evidence to support the district court finding that [the defendant] committed a Florida offense with a comparable Kansas

20

person crime." 309 Kan. at 1275. The Supreme Court remanded the matter so the district court could determine the appropriate classification, holding that at resentencing the State would have the burden to prove the defendant's criminal history by a preponderance of the evidence. 309 Kan. at 1275-76.

The State does not respond to the merits of Grant-Adams' argument. Instead, it suggests our court is precluded from reviewing the claim for two reasons. First, the State asserts that Grant-Adams has failed to furnish an adequate record on appeal that establishes the underlying facts of his 2014 criminal threat conviction. As a result, the State reasons, Grant-Adams has not shown that his conviction was for reckless criminal threat. Under *Obregon*, however, it is the State's burden in the district court to prove a defendant's criminal history by a preponderance of the evidence. 309 Kan. at 1275-76. Based on the record before the district court—which Grant-Adams has designated on appeal—there was insufficient evidence to conclude that Grant-Adams committed the intentional version of criminal threat that could be used in his criminal history score.

Next, the State argues that we lack jurisdiction because Grant-Adams' 2014 criminal threat conviction resulted from a no-contest plea. The State cites K.S.A. 2020 Supp. 22-3602(a) and *State v. Smith*, 311 Kan. 109, 456 P.3d 1004 (2020), for the proposition that an appellate court lacks jurisdiction to review a defendant's conviction on direct appeal from a no-contest plea. The State notes that Grant-Adams was convicted in the 2014 criminal threat case after he pleaded no contest, so it reasons that he may not challenge that conviction in this appeal. But Grant-Adams is not attacking the criminal threat conviction as void, and this is not a direct appeal of that conviction. Grant-Adams is appealing his sentence in this criminal case—only challenging the classification of the criminal threat conviction for criminal history purposes.

21

Because substantial evidence does not support including the criminal threat conviction in calculating Grant-Adams' criminal history score, we vacate his sentence and remand to the district court for resentencing in accordance with this opinion.

CONSTITUTIONALITY OF JUDICIAL FACT-FINDING
REGARDING PRIOR CONVICTIONS AT SENTENCING

Grant-Adam's final argument on appeal is that the KSGA violates his state and federal constitutional rights to a jury trial because it permits judicial fact-finding of prior convictions. Those findings, Grant-Adams contends, enhance a defendant's sentence without first requiring the State to prove those convictions to a jury beyond a reasonable doubt. According to Grant-Adams, judicial fact-finding violates the Sixth Amendment to the United States Constitution, as set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and section 5 of the Kansas Constitution Bill of Rights.

A constitutional challenge to the KSGA involves a question of law subject to unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

Grant-Adams candidly concedes that the Kansas Supreme Court has rejected the argument he makes about *Apprendi* and criminal-history scores in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). Since then, our Supreme Court has reaffirmed *Ivory* numerous times. See *State v. Williams*, 299 Kan. 911, 941, 329 P.3d 400 (2014); *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013). Because there is no indication that our Supreme Court is departing from its earlier position in *Ivory*, our court must follow that precedent. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (stating that Kansas Court of Appeals is duty-bound to follow Kansas Supreme Court precedent unless some indication court is departing from previous position).

Grant-Adams' claim under the Kansas Constitution is that section 5 preserves the jury trial right as it historically existed at common law when the State's Constitution came into existence. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1133-34, 442 P.3d 509 (2019). Relying on cases cited by Justice Thomas in his *Apprendi* concurrence, Grant-Adams asserts there was an American common-law right to a jury trial on penalty-enhancing prior convictions that predates Kansas statehood. And because the KSGA relies on judicial prior conviction findings to determine presumptive sentences, Grant-Adams surmises that the KSGA violates the common-law right to a jury trial enshrined in section 5.

Recently, our Supreme Court considered and rejected a similar argument in *State v. Albano*, 313 Kan. ____, Syl. ¶ 4, 2021 WL 2171172 (Kan. 2021). The Supreme Court held:

> "Section 5 of the Kansas Constitution Bill of Rights does not guarantee defendants the right to have a jury determine the existence of sentence-enhancing prior convictions under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq.; no authority substantiates that defendants had such a jury trial right at common law when our state Constitution was adopted." 313 Kan. ___, Syl. ¶ 4.

Grant-Adams' arguments regarding this sentencing issue are without merit.

Accordingly, we affirm in part, reverse in part, vacate Grant-Adams' sentence, and remand the case with directions to appoint conflict-free counsel, reconsider the motion to withdraw plea, and resentence the defendant in accordance with this opinion.