NOT DESIGNATED FOR PUBLICATION

Nos. 127,426
127,427

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS RAINES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Submitted without oral argument. Opinion filed May 16, 2025. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., MALONE and COBLE, JJ.

PER CURIAM: Travis Raines appeals the denial of his presentencing motion to withdraw his guilty pleas to possession of cocaine, criminal possession of a weapon, and criminal threat. Raines argues that (1) the district court abused its discretion by denying his motion to withdraw his guilty pleas and (2) this court must remand for a hearing on whether an actual conflict existed between Raines and his appointed counsel. After thoroughly reviewing the record, we find that the district court did not abuse its discretion in denying the plea withdrawal motion and that Raines fails to show a sufficient reason to remand for the district court to further investigate Raines' dissatisfaction with his counsel.

1

FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 2021, Officer Braden Hill of the Wichita Police Department responded to Wesley Medical Center after an off-duty officer had placed a man, later identified as Raines, in custody. Raines was apprehended following a physical altercation with two hospital security guards. After taking custody of Raines, Hill performed a cursory search and found a small plastic bag with a white, rock-like substance in his pocket. The substance was later tested and turned out to be cocaine.

On June 8, 2023, Detective Daniel Weidner responded to a disturbance call involving a weapon. Weidner found Raines aggressively yelling at another man, and when Weidner tried to speak to him, Raines grew even more agitated and threatened Weidner, at which point he was arrested. A witness stated the incident began when Raines flew into a rage while driving and pulled out a gun during the ensuing dispute.

The State charged Raines with one count of possession of cocaine in case No. 23CR1245, relating to the incident at the hospital in November 2021. Later that same week, the State charged Raines with aggravated assault, criminal possession of a weapon, and criminal threat in case No. 23CR1280 for the incident on June 8, 2023.

Raines expressed his desire to represent himself in both cases. After explaining the potential dangers and disadvantages of self-representation, the district court granted his request. During its detailed colloquy, the district court cautioned Raines that he would be expected to follow all applicable legal rules and that he would be held to the same standard as any licensed attorney practicing before the court. Raines confirmed that he understood these expectations and that he still wanted to represent himself. The district court found that Raines had made "a knowing, intelligent waiver of counsel, and a knowing, intelligent decision to represent himself."

Raines represented himself at the joint preliminary hearing, where the district court bound him over on all charges. Raines and the State negotiated a plea deal, which they announced to the district court on the morning the trial was set to begin. Raines agreed to plead guilty to possession of cocaine, criminal possession of a weapon, and criminal threat in exchange for the State's dismissal of the aggravated assault charge. The State also agreed to recommend that the district court sentence Raines to the low number in the applicable grid boxes and run the sentences for each count concurrently. The district court conducted a plea colloquy to ensure that Raines was entering his plea voluntarily and intelligently. After Raines confirmed his desire to do so, the court accepted his plea. The presentence investigation report for each case showed that Raines had over 35 prior convictions and had a criminal history score of A in each case.

At the scheduled sentencing hearing, Raines told the district court that he wanted to withdraw his guilty pleas. The court informed Raines that it would appoint counsel for him to file a formal motion to withdraw the pleas, and Raines agreed. Raines' appointed counsel moved to withdraw the pleas, arguing that Raines was forced to proceed pro se due to the quality of his appointed attorneys and that he had received ineffective assistance of counsel from himself during the plea negotiations. He also argued that one of the witnesses at the preliminary hearing had provided false testimony and that his arrest and search incident to arrest in case No. 23CR1245 were illegal.

On January 22, 2024, the district court held an evidentiary hearing on Raines' motion to withdraw his pleas. Raines was the only witness to testify at the hearing. Raines testified that he did not receive discovery and that the State had failed to call certain witnesses at his preliminary hearing. He also asserted that the legal system is biased against him because he is a Black man. Raines explained that he had changed his mind about the plea because he "thought the State could give [him] a better offer."

3

Raines became frustrated with his counsel during the hearing. He complained that his counsel never told him he would need to testify at the hearing. In response to a question about the preliminary hearing, Raines criticized his counsel for not providing him a copy of the transcript. Raines questioned his counsel's integrity and complained that his counsel "didn't have me in [his] best interest." Counsel responded and told the district court that he had included everything in the motion that Raines had asked him to include. During this explanation, Raines repeatedly interrupted and told his counsel, "Your motion is trash." Raines asked his counsel whether the motion had included his argument that an arresting officer needed to view the crime to arrest a suspect for a misdemeanor. Counsel responded that he included the argument in his motion even though he did not agree it was the law. The district court agreed that counsel had included the argument in the motion. Counsel expressed his own frustration, "I'm kind of at a loss where to proceed at this point. . . . [I]f he's challenging everything I'm doing today, I don't know how I can proceed to represent him in this case." The district judge replied, "Well, I mean, we're in the middle of a hearing, so I don't think that now is the time to raise anything in the middle of a hearing with regard to that. So let's just continue."

After the district court's response, Raines continued with his testimony, explaining that he had negotiated the plea deal with the State and that he understood his rights as well as the terms of the deal. He again expounded on his theory that he should not have been arrested in the hospital—the incident leading to the possession of cocaine charge— because the arresting officer did not personally witness his struggle with the guards. Raines also continued to explain that he did not actually want to represent himself but felt he was compelled to do so because the public defender's office was "filthy" and untrustworthy. He then accused his counsel of being incompetent. The district court tried to refocus Raines, stating, "Mr. Raines, we need to get the evidence about . . . this hearing." Counsel completed his direct examination by asking, "[I]s there something else you'd want to say, Mr. Raines?" Raines responded, "No."

4

Before asking for argument from counsel, the district court questioned Raines and asked him to explain "what things in this case happened that you think are racist[?]" Raines mentioned that he was forced to wear a red jumpsuit to the hearing, and the district court explained that was for security reasons and had nothing to do with race. The district court then asked, "[A]nything else in this case . . . that you think . . . was racist?" Raines expounded on his belief that the Kansas legal system was racist compared to Arizona and Oklahoma where he had also been imprisoned.

After hearing arguments of counsel, the district court denied Raines' motion. The district court stated that Raines had not established good cause because:  (1) his concerns about continuances being forced on him by appointed counsel were unfounded; (2) the State had carried its burden at the preliminary hearing; (3) Raines was familiar with the judicial system and had knowingly represented himself; (4) he was not coerced, mistreated, or taken advantage of; (5) the plea agreement he reached with the State was "fantastic" and "favorable"; and (6) there was no evidence that racial biases had led to the outcome in the case. The district court proceeded directly with sentencing. The court followed the plea agreement and sentenced Raines to 37 months' imprisonment for possession of cocaine in case No. 23CR1245 and a controlling term of 19 months' imprisonment for criminal possession of a weapon and criminal threat in case No. 23CR1280, with the sentences in each case to run concurrent to one another. Raines timely appealed in each case. This court consolidated Raines' cases for appeal.

DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING
RAINES' PRESENTENCE MOTION TO WITHDRAW HIS PLEA?

Raines argues that the district court abused its discretion when it denied his motion to withdraw his pleas because its decision was unreasonable under the circumstances. Raines contends that he received lackluster advocacy, was misled and coerced into

entering his pleas, and did not understand his pleas due to a lack of adequate discovery. The State maintains that Raines has established no abuse of discretion.

When a defendant moves to withdraw a plea before sentencing, the district court may grant the motion for "good cause shown." K.S.A. 22-3210(d)(1). In determining whether a defendant has shown good cause, district courts generally look to three factors, commonly referred to as the *Edgar* factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020); *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The Kansas Supreme Court has instructed that these factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

This court reviews the district court's decision on a plea withdrawal motion for an abuse of discretion. *State v. White*, 289 Kan. 279, 284, 211 P.3d 805 (2009). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). In reviewing the district court's factual findings, this court will not reweigh evidence or reassess witness credibility. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). As the party alleging an abuse of discretion, Raines bears the burden of showing it. See 307 Kan. at 503.

Following the structure of the *Edgar* factors, Raines argues: (1) he provided himself with lackluster advocacy, (2) he was misled and coerced into entering his pleas, and (3) his pleas were not knowingly made. First, he asserts that he had, in himself, incompetent representation during plea negotiations. In the context of a presentence motion to withdraw a plea, the lower standard of "'lackluster advocacy'" applies to whether a defendant had competent counsel. See *State v. Herring*, 312 Kan. 192, 198,

6

474 P.3d 285 (2020). Raines contends that he provided himself lackluster advocacy because he "could have gotten a better deal than he did," "had no legal training," "had never represented himself before," and "had no idea what he was doing."

On top of the fact that Raines had previously represented himself and was able to negotiate a favorable plea deal, he was thoroughly cautioned by the district court about the disadvantages and pitfalls of self-representation. Raines does not argue that the district court failed to fully advise him of his right to counsel or any consequences of waiving that right. Raines seems to argue that he did not have competent counsel simply because he decided to represent himself. But he fails to point to any evidence in the record to show that he actually did a lackluster job at the preliminary hearing or during plea negotiations. While Raines could have perhaps received better counsel from an appointed attorney, it cannot be said that he provided himself lackluster advocacy. The first *Edgar* factor does not weigh in Raines' favor.

Turning to whether he was misled or coerced into entering his pleas, Raines contends, "the racism of the entire criminal justice system coerced him into taking the pleas." But he fails to point to any concrete evidence of individual, institutional, or structural racism that forced him into deciding to enter his pleas. At the hearing on his motion, the district court addressed the matter and asked Raines to explain his accusation of racism. Raines responded that he was being treated differently by prison personnel by being made to wear a red uniform, yet he agreed that prisoners of other races also wore the same color jumpsuit. The district court again asked Raines if there had been any incidents of racism that bore upon his motion to withdraw his pleas, but Raines continued to focus on the conditions of confinement. As a result, the district court found there were no underlying racial issues affecting Raines' pleas. Because Raines affirmatively stated he was not being misled or coerced at the plea hearing and failed to show that his pleas were the result of any racism, the second *Edgar* factor does not weigh in his favor.

7

Finally, Raines alleges that his pleas were not fairly and understandingly made. Raines claims that he could not have made an intelligent plea because "he never received any discovery, such as transcripts, police reports, and Axon videos, before pleading out." Raines' testimony at the hearing paints a conflicting picture about what materials he received; at the hearing he acknowledged being given certain police reports and two folders worth of material from the State, and he admitted that he did not know if any videos of the incident existed. For its part, the State argued that it had provided Raines with all available discovery in the case, including "body cams, flash drives, [and] reports." Raines presented no evidence, beyond his bare allegations, that the State withheld discovery materials from him during the case.

Contrary to his claim on appeal, the record reflects that during his plea colloquy, Raines told the district court that he understood the plea agreement and its impact. During Raines' plea hearing, the court informed him of the nature of the charges, the factual basis of the charges, and of his constitutional rights that would be waived upon his guilty pleas. The court also advised Raines about the maximum penalties he could face at sentencing. The plea hearing transcript shows Raines responded affirmatively to the district court's many questions aimed at ensuring he entered his pleas understandingly and voluntarily. The same judge who ruled on Raines' motion to withdraw his pleas presided over the plea hearing and was able to observe Raines when he stated he understood the nature of the charges against him, the constitutional rights he was waiving, and the consequences of his pleas. Without more evidence from Raines, we have no basis to find he did not knowingly enter his pleas. Thus, the third *Edgar* factor also weighs against Raines' claim that he established good cause to withdraw his pleas.

Raines fails to show that any *Edgar* factors weigh in his favor or that there is any other reason to support his claim. We conclude the district court did not abuse its discretion in denying Raines' motion to withdraw his guilty pleas.

8

IS REMAND NECESSARY TO INVESTIGATE RAINES' DISSATISFACTION WITH COUNSEL?

Next, Raines contends the district court committed reversible error when it failed to adequately inquire about the apparent conflict between himself and his appointed counsel who assisted him with his motion to withdraw his pleas. Raines argues that "this Court must remand with directions for the district court to hold a hearing on Raines' claim of attorney dissatisfaction, wherein he must be represented by conflict-free counsel." The State maintains a remand is unnecessary and the district court did not abuse its discretion because there was no conflict of interest, irreconcilable disagreement, nor a complete breakdown in communication between Raines and his counsel.

Raines acknowledges that he is raising this issue for the first time on appeal. But he points out that the Kansas Supreme Court has held that a challenge to the district court's failure to adequately inquire about a conflict of interest between a defendant and appointed counsel is an issue that can be raised by the defendant for the first time on appeal. See *State v. Prado*, 299 Kan. 1251, 1257, 329 P.3d 473 (2014). The State does not challenge Raines' ability to raise this issue for the first time on appeal.

The Kansas Supreme Court has held that because a district court is "charged with safeguarding a defendant's Sixth Amendment right to counsel[,]" if it "'becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the court has a duty to inquire further.'" *Prado*, 299 Kan. at 1256. Our Supreme Court has also held that in order to trigger a district court's duty to inquire into a potential conflict of interest, a defendant typically must make "'an articulated statement of attorney dissatisfaction.'" *State v. Pfannenstiel*, 302 Kan. 747, 760, 357 P.3d 877 (2015) (quoting *State v. Brown*, 300 Kan. 565, 575, 331 P.3d 797 [2014]).

While a defendant has a constitutional right to counsel in a felony criminal case, they do not have the right to *choose* which attorney will be appointed to represent them.

9

To warrant substitute counsel, a defendant must demonstrate "'justifiable dissatisfaction'" with appointed counsel. *State v. Breitenbach*, 313 Kan. 73, 90, 483 P.3d 448 (2021) (quoting *State v. Sappington*, 285 Kan. 158, 166, 169 P.3d 1096 [2007]). Justifiable dissatisfaction includes demonstrating a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between the defendant and counsel. *Breitenbach*, 313 Kan. at 90. A court is justified in refusing to appoint new counsel as long as there is a reasonable basis to believe the attorney-client relationship has not deteriorated so much that appointed counsel can no longer effectively aid in the presentation of a defense. 313 Kan. at 90. Moreover, our Supreme Court has held that when the defendant's dissatisfaction stems from a complaint that cannot be resolved by the appointment of new counsel, meaning replacement counsel would have the same conflict or dilemma, the defendant has not shown the requisite justifiable dissatisfaction. *State v. Smith*, 291 Kan. 751, 755, 247 P.3d 676 (2011).

A district court presented with a potential conflict of interest can err in three ways in handling the situation: (1) by simply failing to conduct an inquiry at all, (2) by failing to conduct an appropriate inquiry, or (3) by incorrectly deciding whether to substitute counsel. *Pfannenstiel*, 302 Kan. at 760-62. A district court abuses its discretion if it fails to make an inquiry into the nature of the conflict after becoming aware of a potential attorney-client conflict. *Prado*, 299 Kan. at 1256-57. When a district court asks about a potential conflict, its decision on how to proceed is reviewed for an abuse of discretion. *State v. Stovall*, 298 Kan. 362, 370, 312 P.3d 1271 (2013).

Raines argues the district court erred by failing to make any inquiry into his conflict with his counsel during the hearing on his motion to withdraw his pleas. The first step in our analysis is to determine whether Raines made "'an articulated statement of attorney dissatisfaction'" to trigger an inquiry. *Pfannenstiel*, 302 Kan. at 760. Raines never asked for new counsel nor to represent himself, although we realize that a defendant need not explicitly request new counsel to initiate the district court's duty to

10

inquire. *Prado*, 299 Kan. at 1257. Still, Raines never pointed to any actual conflict of interest preventing his counsel from representing him. He merely complained about the allegedly poor job his counsel was doing in handling the plea withdrawal motion. And although counsel questioned whether he could continue to represent Raines at the hearing, he proceeded to do so, and the record shows he performed competently. Although Raines did not ask for new counsel and never pointed to an actual conflict of interest preventing his counsel from representing him, we will presume for our analysis that his complaints about his counsel's performance amounted to an articulated statement of attorney dissatisfaction triggering the district court's duty to inquire.

Step two of our analysis is to determine whether the district court inquired about a potential conflict between Raines and his counsel, and if so, whether the inquiry was adequate to resolve the matter. Here, the district court never asked Raines an open-ended question for him to explain the nature of his dissatisfaction with his counsel, and it is problematic that the judge said it could not take up the matter in the middle of the hearing. But we believe it is incorrect to say that the district court made no inquiry about attorney dissatisfaction and potential conflict. In making an inquiry, the district court need not make "'a detailed examination of every nuance'" of a defendant's claim of dissatisfaction with counsel. *State v. Toothman*, 310 Kan. 542, 554, 448 P.3d 1039 (2019). Rather, a district court must only give the defendant "'the opportunity to explain'" the alleged conflict of interest with counsel. See *State v. Valdez*, 316 Kan. 1, 25, 512 P.3d 1125 (2022).

A review of the entire record shows the district court garnered sufficient comments from Raines and his counsel to flesh out the complaints Raines had with his counsel. Raines received the opportunity to explain his complaints about his counsel and was allowed to say whatever he wanted to say about them. Although Raines expressed dissatisfaction with his counsel, the record shows it was not justifiable dissatisfaction. Contrary to Raines' complaints, the record shows that his counsel presented to the district

11

court all of Raines' arguments for wanting to withdraw his pleas—even arguments that counsel did not believe were good ones. Also, the district court asked Raines to explain his claim of racial bias, and he expounded on his belief that the Kansas legal system was racist. But Raines' generalized complaints about the legal system being biased against him would not be resolved by the appointment of new counsel. We fail to see what could be accomplished by remanding the case for further inquiry into Raines' complaints.

The district court did not make explicit findings to resolve Raines' complaints against his counsel. But given the district court's inquiry, counsel's limited involvement in the case, and Raines' nebulous complaints, the fact that the court allowed counsel to complete the hearing amounts to an implicit finding that Raines failed to establish justifiable dissatisfaction with his counsel. Generally, a party alleging an error bears the responsibility to object to inadequate findings of fact and conclusions of law to give the district court an opportunity to correct any alleged inadequacies. See *State v. Espinoza*, 311 Kan. 435, 436-37, 462 P.3d 159 (2020). When a party fails to object to a lack of findings, an appellate court can presume that the district court found all facts necessary to support its judgment. A remand due to insufficient findings is only necessary if the record does not support such a presumption and the dearth of findings precludes meaningful review. *State v. Sanders*, 310 Kan. 279, 290, 445 P.3d 1144 (2019).

Based on the entire record, we find that to the extent Raines articulated a statement of attorney dissatisfaction and potential conflict, the district court adequately allowed Raines and his counsel to express their views on the matter and did not abuse its discretion by allowing Raines' counsel to complete the hearing. And for all the reasons we explained in addressing the first issue in this appeal, the record shows that Raines received a thorough hearing with the assistance of competent legal counsel but could not show good cause to withdraw his guilty pleas. Raines' Sixth Amendment right to counsel was not violated here. A remand for further inquiry is unnecessary.

Affirmed.